## Case No. 289.

### The AMERICA.

[1 Low. 176;[1] 2 Amer. Law Rev. 458.]

District Court, D. Massachusetts. Oct., 1867.

ADMIRALTY—JURISDICTION—RULES—PILOT'S LIEN GIVEN BY STATE STATUTE—ENFORCEMENT.

1. The admiralty has jurisdiction to enforce a lien against a vessel given by a state statute in certain cases to a pilot whose services have been tendered and refused.

[Cited in Flanders v. Tripp, Case No. 4.854; The California, Id. 2,312; The Williams, Id. 17,710; The George T. Kemp, Id. 5.341; The Kalmar, Id. 7.601; Joslyn v. Nickerson, 1 Fed. 134; The Alzena, 14 Fed. 175; The Edith Godden, 25 Fed. 511.]

2. The twelfth admiralty rule prescribed by the supreme court, which, as amended, prohibits the district courts from enforcing certain liens created by state statutes, has no application to pilots; for they come under the fourteenth rule.

[Cited in Flanders v. Tripp. Case No. 4.854; The George T. Kemp. Id. 5,341; The Edith Godden, 25 Fed. 511.]

In admiralty.

J. B. Richardson, for libellant.

T. K. Lothrop, for claimant.

LOWELL, District Judge. The libellant, William R. Lampee, is a branch pilot, duly commissioned and qualified for the port and harbor of Boston. He spoke the brig America outside the line prescribed for that purpose, and offered his services to pilot her in, and was the first pilot that offered; but the master refused to employ him. The brig was inward bound, and was of a size and class presumed by law to require such services. Under these circumstances the vessel is bound, by the laws of Massachusetts, to pay the usual pilotage fee; and the same law gives a lien on the vessel and her appurtenances, for the space of sixty days, "for all legal claims on account of pilotage, either rendered or offered." Stat. 1862, c. 176, schedule, cls. 4, 5, 10. All this is admitted, but the claimants insist that this court has not jurisdiction to enforce the lien. The states have power to regulate pilotage, in the absence of legislation by congress; and a regulation which gives to a duly qualified pilot a fee for services offered and refused is reasonable, and in accordance with the policy and practice of many commercial countries. Cooley v. Board of Wardens of Phila., 12 How. [53 U. S.] 299. A law substantially similar has been in force in this commonwealth from a period earlier than the adoption of the Constitution of the United States, and has been often construed and upheld by the courts. It does not impose a penalty, but implies a debt which may be recovered by an action of contract. Com. v. Ricketson, 5 Metc. [Mass.] 412; Hunt v. Mickey, 12 Metc. [Mass.] 346; Winslow v. Prince, 6 Cush. 368; Hunt v. Carlisle, 1 Gray,

257. By the Revised Statutes of Massachusetts of 1836 (chapter 32, § 12,) the master only was liable to make this payment; but by the regulations of the commissioners, under authority and having the force of law, the responsibility of the owner was added: Hunt v. Mickey, supra. In this state of the law Judge Sprague decided that the statute did not contemplate a lien on the vessel, but a mere personal debt, and that he could not supply the defect. The Robert J. Mercer, [Case No. 11,891.] The law has now been changed, and it is highly probable that the change was suggested by this decision. The liability is now attached to the vessel, in terms, without mention of either owner or master. No doubt this language may well be taken to imply a liability of both master and owner; but it certainly is intended to hold the vessel, for it proceeds to give a lien in the words already cited. This brings the case directly within the fourteenth admiralty rule: "In all suits for pilotage, the libellant may proceed against the ship and master, or against the ship, or against the owner alone, or the master alone, in personam." This is a suit for pilotage, that is, for a pilot's fee; not indeed for services actually rendered in piloting a vessel, but for an offer which the law makes the equivalent of such actual service. If the justice of the case required it, the libellant might be permitted to allege that he had piloted the vessel; but it does not, for the contract to pay the pilotage is complete, and conclusively presumed by law from the demand and refusal. If this court has not jurisdiction, the lien cannot be enforced; because the state law provides no process in rem, but leaves the pilot to the remedy which Judge Sprague would have granted, as he says, if the statute then before him had been like the law now in force. And even if the state statute had undertaken to give a remedy, it is very doubtful whether it could have been availed of against this foreign vessel consistently with the constitution of the United States. The Moses Taylor, 4 Wall. [71 U. S.] 411.

The cases, People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393; Maguire v. Card, 21 How. [62 U. S.] 248; Roach v. Chapman, 22 How. [63 U. S.] 132,—are cited as authority for the position that this court can never enforce a lien given by a state statute. [If this were so, there would seem to be no jurisdiction anywhere to enforce this valid and reasonable regulation.][2] But these cases, and others like them, have been fully and carefully explained as announcing only a rule of practice in the matter of repairs and supplies to domestic vessels, and not a general principle of jurisdiction; and, accordingly, a libel brought to enforce such a lien was upheld after the twelfth admiralty rule had been changed, on the ground that the

---

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2][From the case as reported in 2 Amer. Law Rev. 459.]

AMERICAN (Case No. 290)

libel was filed before that time. Of course that decision settles the right of a state to create a maritime lien, and of the admiralty court to enforce it, in proper cases; and vindicates the uniform action of the district courts from the foundation of the government: The St. Lawrence, 1 Black, [66 U. S.] 522. Whether the supreme court under its power to make rules, can lawfully oust the jurisdiction of the district courts in a case which is confessedly maritime, does not appear to have been very much considered by the court, and might be worthy of argument here after. Again: it has never been decided that, in the case of a contract [confessedly maritime and][3] which by the general maritime law would give rise to a lien, the remedy in admiralty would be taken away by the mere fact, that the duration and extent of the lien may have been lawfully regulated by state legislation. Such is the present case. The general maritime law, recognized in the fourteenth admiralty rule, gives pilots a lien on the ship; the state has the right to regulate the subject-matter, and declares that a pilotage contract is complete when a due demand has been made and rejected: can there be a doubt that the pilot thereupon has a lien upon the ship, by the general maritime law, to enforce this valid contract? If so, he surely does not lose it, because the state tries to help him to it. If he does, then he must equally lose his lien for pilotage actually performed; for they stand on the same foundation, and are given by the same clause of the statute. My opinion therefore is, that, as this case comes within the fourteenth rule, and not the twelfth, this court has jurisdiction to enforce a state lien; and if this were not so, that a lien is implied or results from a valid contract for pilotage, unless, as in the case before Judge Sprague, the law expressly or by implication denies it. Taken either way, there is a lien which gives the right to proceed here against the vessel.

AMERICA, The, (BRUCE v.)

[See Bruce v. The America, Case No. 2,046.]

AMERICA, The, (BRUNSGAARD v.)

[See Brunsgaard v. The America and The Magdalene, Case No. 2,056.]

AMERICA, The, (HUMPHREYS v.)

[See Humphreys v. The America, Case No. 6,869.]

AMERICA, The, (ORHANOVICH v.)

[See Orhanovich v. The America, Case No. 10,568.]

[3][From the case as reported in 2 Amer. Law Rev. 459.]