JOHN W. MURRAY *v.* JOHN H. CLARK *et al.*

A coastwise sea-going steam vessel not sailing under register, within the meaning of § 51 of the act of Congress of February 28th, 1871, in relation to pilotage for steam vessels, is one that is enrolled and licensed for the coasting trade in the manner provided by law, whose license is renewable annually; a vessel sailing from one part of the coast of the United States to another, or which is employed in the whale or coast fisheries.

The casual circumstance of such a vessel's stopping at a foreign port from stress of weather or other justifiable cause, not in the way of business or traffic, does not affect her specific character as a "coastwise sea-going steam vessel," under the United States act.

Proof that plaintiff, ten miles from Sandy Hook, offered his services as pilot, and that at that time there was no pilot on board of the vessel, *Held*, sufficient to show that plaintiff was the first pilot speaking or offering his services to the vessel.

APPEAL by defendants from a judgment of the First District Court.

The action was brought by the plaintiff, a Sandy Hook pilot, licensed under the State law, against the defendants as part owners of the steamer St. Louis, for pilotage under § 29 of the Act of April 3, 1857; 1 L. of N. Y. 1857, p. 502.

Murray v. Clark.

The defendants claimed that the St. Louis was a coastwise steam vessel, in charge of a U. S. pilot, and that the act of Congress of February 28th, 1871, made such a vessel subject only to the navigation laws of the United States. That the State act was inoperative in such a case.

They also claimed that the plaintiff had not proved that he was the pilot first speaking or offering his services.

In regard to the first point, it was admitted on the trial "that, at the time alleged in the complaint, the steamer St. Louis was, and that for more than a year previously she had been, and that she has since continued to be, employed in and as one of Cromwell's line of steamers, running between New York and New Orleans regularly, and stopping at no other ports, save that twice—one time being on the voyage in question, on her passage from New Orleans, she stopped at Havana, and that on that voyage she was sailing under a register. It is further admitted that the St. Louis has always been a domestic vessel, wholly owned by citizens of the United States, and that on, before and after the voyage in question, the said steamer was under the control and direction of her master, who was a pilot duly licensed by the inspectors of steam vessels, according to the acts of Congress in such cases made and provided."

As to the question of whether the plaintiff was the first pilot speaking or offering his services, the case was submitted on the following affidavit:

"John W. Murray, being duly sworn, says; that he is a duly licensed pilot; licensed to pilot vessels from and into the port of New York by way of Sandy Hook (license produced). On the 23d day of May, 1871, off Long Branch, about two miles and a half from the beach, at about 4 P. M. of the afternoon of said day, I was in pilot-boat No. 7, as a pilot, and ran to about one hundred feet of the steamer St. Louis, and offered my services to the captain of the ship, and asked him if he wanted a pilot, and he said "No." He did not stop his vessel, nor did he slack up. He did not have any pilot, nor did he take me or any other pilot.

Cross-examined:—The reason I say that the St. Louis had no other pilot, and did not take any other pilot, is that from

the place I spoke him I could see his vessel five or six miles, and no other pilot-boat spoke him in that five or six miles. I spoke him about ten miles from Sandy Hook. By five or six miles I mean from the place I spoke him; five or six miles toward Sandy Hook, as he continued his course.

*Man & Parsons*, for appellants.

I. The regulation of pilotage is within the exclusive jurisdiction of Congress when it sees fit to act. The recent case of *Cisco* v. *Roberts* (36 N. Y. 292, *supra, Id.*), holds pilotage laws are regulations of navigation. Regulations of navigation are regulations of commerce (*Gibbons* v. *Ogden*, 9 Wheaton, 1; *Hobart* v. *Drogan*, 10 Peters, 108; *Norris* v. *City of Boston*, 7 How. U. S. 317; *New York* v. *Milne*, 11 Peters, 158; *Cooley* v. *Port Wardens, &c.*, 12 How. U. S. 317).

The power to regulate commerce is vested in Congress (Constitution of U. S. art. 1, § 8, P. 3).

Although, in the absence of Congressional regulations, a State may legitimately legislate as to pilotage, yet an exercise by Congress of its power is controlling, and, *ipso facto*, abrogates and annuls the previous legislation of a State, and deprives it of further power of regulation thereon (*Cooley* v. *Port Wardens, &c.*, 12 How. U. S. 319; *Sinnot* v. *Davenport*, 22 Id. p. 243).

Congress having made certain regulations as to pilotage, so far as any regulations of any State on that subject are inconsistent with the Congressional regulations, they are unauthorized and invalid (*New York* v. *Milne*, 11 Peters' R. 158; *Sinnot* v. *Davenport, supra*).

The Court of Appeals held in the case of *Cisco* v. *Roberts* (36 N. Y. 292), that the State laws regulating port pilotage were not superseded by the terms of the earlier act of Congress of August 30th, 1852. The court held that that act did not in purpose or effect prevent State port pilotage laws. It also held that it was only in the absence of federal legislation, that the States had the right to pass such laws.

The court expressly refused (page 295) to consider the

effect of the act of Congress of July 25th, 1866, that having been passed prior to the decision, but subsequent to the facts out of which the controversy arose; in the case of *Sturgis* v. *Spofford* (45 N. Y. 446), the same court held that from the time Congress assumes the exercise of the powers conferred by the Constitution, the State law becomes inoperative.

II. The occurrence in this case was in May 23d, 1871, and the question therefore arises under the act of February 28th, 1871. That provides that all coastwise sea-going vessels and all steam vessels shall be subject to the navigation laws of the United States, and that no State government shall pass any laws levying pilot charges upon any steam vessel, with the only proviso for port pilotage in the case of vessels entering or leaving port, other than coastwise steam vessels.

III. The whole question, therefore, is, was the St. Louis a coastwise vessel?

This she clearly was. She was under a register, but that did not constitute her otherwise than a coaster.

Whether she should sail under a register or under an enrollment was purely a question of choice for her owners. There might be convenience in her being registered for which they were willing to pay the enhanced expense. That did not control the route. Her route was between New York and New Orleans. It was that which gave her her character, and that confessedly is a coastwise route. On the voyage in question, it is true, she happened to go into Havana. If her route had been between Havana and New York, she would not have been a coastwise vessel, but such was not the case. She plied regularly to and from New Orleans, and on the voyage in question was bound from New Orleans. It is confidently submitted that her accidental stoppage at Havana did not change her character.

IV. The plaintiff claimed what is substantially a penalty. He failed entirely to show that he was the first pilot speaking or offering his services. He testified that no vessel subsequently spoke the St. Louis so long as she was in sight, but he did not show that no vessel previously spoke her; the burden was on him to show that he was the first pilot.

*George W. Blunt,* for respondent.

I. A coasting (vessel) is: 1. One which sails near the shore. 2. A vessel that is employed in sailing along the coast, or is *licensed* to navigate or trade from port to port in the same country.

To constitute a vessel a coaster, she must first obtain an enrollment or license; with such she is not liable for pilotage, and must confine her voyages to ports situate in the same country, but she can be registered, thereby obtaining the additional privilege of going to foreign ports; but immediately upon becoming registered, she also becomes liable for pilotage, although only a coaster. She loses her character of a coaster (3d Kent, 308).

The act of February 28th, 1871, provides that all steam coastwise vessels shall be exempt from paying pilotage or employing any pilot *if not under register;* if under register what must she do? she becomes liable.

II. Can a pilot licensed by the government inspectors, pilot a vessel into and out of a local port?

The Court of Appeals has decided in the case of *Cisco* v. *Roberts* (36 N. Y. R. 292), that pilots appointed by the inspectors of the government can only pilot for the voyage, and not in and out of those ports where there are port (local) pilots.

A State statute restricting the pilotage of vessels through particular waters to a particular class of qualified pilots is not unconstitutional as trenching upon the exclusive power of Congress to regulate commerce (*People* v. *Sperry,* 50 Barb. 179).

It was also decided in the Court of Appeals (May term, 1871), that the United States statutes did not authorize a pilot appointed by the government inspectors of boilers, hulls, &c., to pilot a vessel in and out of port, but only applied to such government licensed pilots during the voyage, *i. e.,* the duties of the government pilots ceased when the vessel was spoken by a port pilot (*Sturgis* v. *Spofford,* 45 N. Y. 446).

The constitutionality of the acts of Congress of 1789, 1837, and 1852 was brought before the Supreme Court of the United States, December term, 1864, in the case of *The Pacific Mail*

*Steamship Company* v. *William H. Joliffe*, and the acts were there held to be constitutional; and, in addition, the court held " that all vessels coming into the port of San Francisco under *register*, or from a foreign port, should take a pilot duly licensed for the port they were about to enter, and that the refusal to take a pilot subjected the owners, master, engineer, &c., to the amount of pilotage as if one had been employed, which in California is half pilotage, and that the pilot licensed by government inspectors on said vessel was there for the voyage only, and for no other purpose; not to pilot said vessel into a port where there are port pilots (2 Wallace, 160).

The act of Congress of 1852, ch. 106, requiring steamers to have pilots for the voyage, does not dispense with the necessity of employing the pilots of a port in accordance with the local laws, but the pilot for the voyage must surrender his vessel to the port pilot when spoken by him (*Chapman* v. *Jackson*, 9 Richardson's (South Carolina) Reports, p. 209, decision of Court of Appeals of said State).

As to coastwise license (*Gibbons* v. *Ogden*, 9 Wheaton, U. S. 7; *Foster* v. *Davenport*, 22 How. U. S. 244). Presumptions (2 C. H. Rec. 142; Domat. vol. I, p. 819, § 4; Sub. Div. 20, 67; 1 Star Eq. 34).

By the Court.[*]—DALY, Ch. J.—The facts stated in the plaintiff's affidavit were sufficient to warrant a finding that the plaintiff was, within the meaning of the State law of April 3, 1857, § 29, the pilot first speaking or offering his services to pilot the vessel. The remaining question is, whether the vessel was a " coastwise steam vessel," within the meaning of the 51st section of the United States act of February 28, 1871.

That section provides that all vessels propelled in whole or in part by steam, when navigating within the jurisdiction of the United States, shall be subject to the rules and regulations established by the United States for the government of steam vessels, and that every coastwise seagoing steam vessel, subject to such rules and regulations, and to the navigation laws of the United States, *not sailing under register*, shall, when under

---

[*] Present, DALY, Ch. J., ROBINSON and LOEW, JJ.

way, except upon the high seas, be under the control and direc-
tion of pilots licensed by the inspectors of steamboats. This
section further declares that no pilot charges shall, by the
authority of any State or municipal government, be levied upon
any steamer piloted as therein provided for, and a subsequent
provision in declaring that nothing in the act of 1871 shall be
construed to annul or affect any regulation established by the
laws of any State requiring vessels entering or leaving a port
in that State to take a pilot, expressly excepts "coastwise
steam vessels" from the operation of this saving clause. It
follows, from these provisions, that coastwise sea-going steam
vessels cannot, by any law of the State, be compelled to take a
State pilot upon entering or leaving any port in this State,
such vessels being piloted by pilots licensed by the inspectors
of steamboats under the law of the United States, it being well
settled that this is a matter within the exclusive authority of
the government of the United States, if it thinks proper to ex-
ercise it; and any law enacted by the general government
upon this subject, supersedes the authority of any State law
that may be, in whole or in part, inconsistent with it (*Steam-
ship Company* v. *Joliffe*, 2 Wall. 450; *Cisco* v. *Rogers*, 36 N.
Y. 292; *Sturgis* v. *Spofford*, 45 Id. 446).

The question then presented is what is meant in this pro-
vision by a "coastwise sea-going steam vessel," and it appears to
me that the section itself gives the explanation by the language
"not sailing under register." Under the various laws of the
United States collectively known as the registering acts, ves-
sels obtain their national character by being registered, en-
rolled or licensed. If under twenty tons, they may be licensed
only. If twenty tons or over and they are to be employed in
the coasting trade, the whale or the cod fishery, they must be
both licensed and enrolled, and the license must be renewed
annually (Act of February 19th, 1793, §§ 1, 4, 5) and for any
trade or purpose beyond this they are registered (Act of De-
cember 31st, 1792). Our laws do not positively require regis-
tration or enrollment, but until a vessel is registered or en-
rolled she is not an American ship. If she engages in the
foreign, the coasting trade, or the fisheries, she is liable to for-

feiture, and as she cannot, without her proper papers, have the privileges of a foreign or an American vessel, her registry or enrollment becomes a practical necessity. When this statute, therefore, refers to a coastwise sea-going steam vessel, not sailing under registry, it must mean one that is enrolled and licensed for the coasting trade in the manner provided by law, whose license is renewable annually; a vessel sailing from one part of the coast of the United States to another, or which is employed in the whale or coast fisheries. It certainly does not refer to a registered vessel that may trade or sail to any part of the world, as it expressly declares " not sailing under registry."

It appears to have been the design of the act to require steam vessels of this description to be under the control and direction of pilots licensed by the inspectors of steamboats. Making frequent voyages, and sailing in and out of ports upon our coast at short intervals, they are, for the better security of life upon such vessels (Act of February 28th, 1871, title and sections 14, 15, 19, 51) required, when under way and not upon the high seas, to be under the control and direction of the peculiar class of pilots provided for by this act; and as these pilots have charge of them when entering or coming out of the ports of this State, there is no occasion for the services of State pilots. To distinguish them from all other steam vessels, they are, as I have stated, described in the act as " coastwise sea-going steam vessels, not sailing under registry."

The State pilot law of April 24th, 1867, in no way conflicts with the provision of the United States act; the eleventh section of the State law imposing the obligation of taking a pilot licensed by the State board, only upon the masters of foreign vessels, vessels coming from a foreign port, and vessels sailing under registry.

A coastwise vessel is one sailing by the way of, or along a coast. In a certain sense, the St. Louis was a vessel of this description. For a year previous to the commencement of this suit she was employed as one of a line of steamers running regularly between New York and New Orleans, but was not necessarily limited to running by the way of, or to and from ports upon our coast. She was a registered vessel, and being

so, was privileged to go to or stop at foreign ports, and did so. Upon two occasions she stopped at other ports, one being the voyage in question, when she stopped at Havana upon her voyage from New Orleans to New York, and when the plaintiff offered his services, she was, in the language of the State law, both a registered vessel and coming from a foreign port, Havana. If she had been an unregistered vessel, the casual circumstance of her stopping at a foreign port from stress of weather or other justifiable cause, not in the way of business or traffic, would not affect her specific character under the United States act as a coastwise sea-going steam vessel, not sailing under register. But being a registered vessel, she stopped at Havana as she was privileged to do, and for all that appears may have done so not from necessity, but in the course of business. The admission states that upon the voyage in question she was under the control and direction of her master, who was a pilot duly licensed by the inspectors of steamboats, according to the United States act of 1871. I do not think that this affects the question, whether she was or was not the kind of vessel provided for by that act; for if she were not, she would not become so by the inspectors of steamboats licensing her master as a pilot under the United States act. That was a privilege, office, or right personal to him, which in no way attached to the vessel, if she were not of the description or class required by that act to be under the direction and control of such a pilot, when not upon the high seas.

The judgment, I think, should, therefore, be affirmed.

Judgment affirmed.