## THE STEAMSHIP UNITED STATES.

### JOSLYN *v.* NICKERSON.

*(Circuit Court, D. Massachusetts.* February 9, 1880.)

PILOTAGE—CERTIFICATE OF LICENSE.—Certificate of master of steamer construed, and *held* that intent to authorize him to act as pilot, under Rev. St. § 4443, was sufficiently expressed.

SAME—LICENSE BY INSPECTORS OF THE UNITED STATES.—Inspectors of the United States have authority to issue a license to the master of a steamship to act as pilot between Boston and Havana.

SAME—LOCAL PILOT.—A steamship with a master so licensed is exempt, under Statutes of Massachusetts of 1862, *c.* 76, schedule, clause 15, from the payment of compulsory pilotage.

In admiralty.

LOWELL, J. This is a libel for pilotage, heard on appeal from a decree of the district court dismissing the suit. The facts were agreed in writing, substantially as follows: On the 2d of May, 1879, the libellant was a pilot, duly commissioned and qualified under the laws of Massachusetts, for the harbor of Boston, and he seasonably offered to take charge of the steamship "United States," which was approaching the harbor on a voyage from Havana, and was the first pilot to tender his services, which were declined. The "United States" is a steam vessel of 1,180 tons, owned in Boston, and subject to the navigation laws of the United States, and was sailing under a register. The master, mate and engineer had been duly licensed by the board of inspectors, and the master

was also commissioned by the same board as a first-class·
pilot, "as appears from the certificate, of which a copy, 'C,' is
annexed." The certificate I will give·presently. The vessel
was fitted, equipped and used as a passenger steamship be-
tween Boston and Havana; carried passengers on this voy-
age; was under the charge of her said master; and was by
him piloted into the harbor of Boston.

By the law of Massachusetts, Statutes of 1862, c. 176,
schedule, clauses 4, 5 and 10, the "United States" would be
liable for pilotage, unless relieved by clause 15. *The America*,
1 Lowell, 176. Clause 15 is as follows: "All passenger
steam vessels regulated by the laws of the United States,
and carrying a pilot commissioned by United States commis-
sioners, are exempt from the compulsory payment of pilotage."
When this statute was passed the act of Congress of August 30,
1852, (10 St. at Large, 51,) regulating steam vessels which
carried passengers, was in force. By section 9, clauses 7 and 9,
of that act, the boards of inspectors of steamboats were re-
quired, within their several jurisdictions, to examine into the
character and qualifications of any person who should claim
to be a skilful pilot, and should offer himself for a license,
and, if they found him competent, to grant him a certificate
licensing him as a pilot of such vessels for one year, within
the limits prescribed in the certificate. Clause 10 imposes a
penalty on persons acting as pilots of such steam vessels
without a license from the inspectors. Many able lawyers
were of opinion that this statute was intended to require all
local pilots to be licensed by the inspectors of the United
States. See *The Panama*, 1 Deady, 27, and the dissenting
opinion in *Steamship Co.* v. *Joliffe*, *infra*. It is possible that
the legislature of Massachusetts may have had this belief,
but the supreme court decided·in 1864 that pilots of harbors
were not within the statute, and that, therefore, the state
laws as to such pilots remained in force. *Steamship Co.* v.
*Joliffe*, 2 Wall. 450. ·

After this decision was given an act of congress was passed
requiring all American steam vessels, whether carrying pas-
sengers or not, excepting public ships of the United States, to

be under the control of one of these licensed pilots when under way, except upon the high seas. Stat. July 25, 1866, 14 St. at Large, 228. This statute has been modified, and the employment of such a pilot is now compulsory only upon coasting steam vessels not sailing under a register. Rev. St. § 4401; *Murray* v. *Clark*, 4 Daly, 468, affirmed, 58 N. Y. 684. This vessel, therefore, was not bound to carry such a pilot, and was bound by any law of Massachusetts which might require her to take a local pilot. Rev. St. § 4444.

The district court decided that the "United States" was carrying a pilot, within the exemption of the Massachusetts law.

A doubt has been raised for the first time in this court whether the certificate of the master licenses him to act as pilot. The statute permits one license to be granted to a master or mate to act as a pilot, and requires that it should "state on its face that he is authorized to act in such double capacity." Rev. St. § 4443. The agreement of the parties finds that Captain Hedge was thus authorized, but it refers to the certificate, and the libellant argues that if his construction of that instrument was mistaken he is not bound by his admission of a matter of law. I have procured a copy of the certificate, distinguishing what is printed or engraved and what written. It is as follows, the part in Italics being written and the remainder engraved:

"This is to certify that *Daniel Hedge* has given satisfactory evidence to the undersigned local inspectors of steam vessels for the District of *Boston, Mass.*, that he is a skilful master of steam vessels, and can be entrusted to perform such duties upon the waters of the *Atlantic Coast*; *also, to act as First Class Pilot between Boston and Halifax, P. E. I., and Havana, Cuba and intermediate ports*; and he is hereby licensed to act as such master on steam vessels for the term of one year from this date. Given under our hands this twenty-second *day of January, 1879.*

"*Andrew Burnham*,

"Inspector of Hulls.

"*Andrew J. Savage*,

"Inspector of Boilers."

If this paper is construed strictly, like a license to enter upon the land of another, the part which grants the license grants it only to Hedge as master. It would seem, however, from the appearance of the paper that it is a form of license for a master, having no space to add "and pilot," and from the fact being certified that Hedge can be entrusted to act as pilot within certain defined limits, and from the stipulation of the parties, I have no doubt it was intended, and in construing such an instrument as this I may hold that the intent is sufficiently expressed, that the master is licensed to act in the double capacity of master and pilot. Otherwise, the examination of evidence concerning his skill and competency as a pilot, and the judgment carefully written into the document that his evidence proves his qualifications so to act, are senseless and void.

It is admitted that the inspectors of steamboats are the United States commissioners referred to in the pilotage act of Massachusetts.

If the master was licensed as a pilot between Boston and Havana, the vessel was apparently exempted from paying the local charges. The libellant meets this defence by two arguments:

1. That the inspectors of the United States have no lawful authority to grant licenses excepting for coastwise service, that being the only kind of service in which pilots so licensed must be taken. The law does not seem to be so. I have looked through the various statutes now represented by title 52 of the Revised Statutes, and through that title, and find provisions in the same general language for inspecting the hulls and boilers of steam vessels, and for examining and certifying their masters, mates, engineers and pilots. There is nothing to distinguish pilots from masters, mates and engineers, and there is no law that I know of requiring a vessel to have a master or mate; but when these officers are employed they must be licensed. There seems to be no connection between the necessity for employing these persons and the necessity for their being licensed if they are employed. Nor can the words of the statute be limited to coasting ves-

sels.   By Rev. St. title 52, § 4399, every vessel propelled in whole or in part by steam is a steam vessel within the meaning of that title.   By section 4438 the inspectors shall license and classify the masters, chief mates, engineers and pilots of all steam vessels.   This is the law; and its practical construction by the persons interested has always been general, and I see not how any other could be given.

It is to be added that there was no compulsory pilotage under the act of congress of 1852; and, therefore, the construction contended for deprives that statute of all force.

2.  A second reply made by the libellant to the asserted exemption is that the statute of Massachusetts, when speaking of a licensed pilot, must be taken to mean one who is licensed to do the very act of pilotage which the local pilot offers to perform; and that, by the decision in *Steamship Co.* v. *Joliffe,* 2 Wall. 450, a pilot such as was on board the "United States" is only licensed for the high seas.   There is much force in this argument.   The answer to it is substantially the same which was given to the first point.   Under the act of 1852, as construed, pilots were in reality licensed for the high seas; but they were the only pilots in existence to whom the Massachusetts act could apply.   Therefore, if that act did not refer to pilots of this sort, it was without meaning and exempted no one.   Whatever may have been the view of the legislature as to the scope of the act of congress of 1852, it was to meet that act, and to exempt such pilots as were licensed in accordance with its provisions, that clause 15 was framed.   While, therefore, it is entirely competent for the legislature of the state to subject this class of foreign-going American merchant ships to this charge, I am of opinion that they have not as yet seen fit to do so, when a pilot licensed by the inspectors of the United States for the voyage actually performed is on board and has charge of the navigation.

For these reasons the decree of the district court is affirmed.