Adolfo **CAMPOS**, Plaintiff, Appellee,

v.

**PUERTO RICO SUN OIL COMPANY, INC.,** Defendant, Appellant.

No. 75–1320.

United States Court of Appeals, First Circuit.

Argued Feb. 9, 1976.

Decided June 24, 1976.

Nicholas Jimenez, San Juan, P. R., with whom Jimenez & Fuste, Nicolas Jimenez, San Juan, P. R., and Paul E. Calvesbert Borgos, Hato Rey, P. R., were on brief, for appellant.

Harry A. Ezratty, San Juan, P. R., with whom Ezratty & Sarraga, San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff, a licensed ship pilot, brought this action to recover pilotage fees. The dispute centers around a single question: whether a pilot's license held by another pilot, Fructuoso Reyes, for the Port of Yabucoa (the Port), Puerto Rico, properly authorizes Reyes to pilot across the one-and-a-half mile portion of the Sound of Vieques (the Sound) that separates the Port from the open sea. Ruling that it did not, the district court granted summary judgment for plaintiff.[1]

Puerto Rico is a compulsory pilotage jurisdiction. Under 23 L.P.R.A. § 2412 (1974 Supp.),

> "No alien ship nor any ship of the United States navigating under registration [with certain exemptions not here relevant] may enter or leave a harbor without obtaining pilot service from a pilot licensed by the [Puerto Rico Ports] Authority for the said harbor."[2]

Defendant, which has an oil refinery at the Port, has operated tankers to and from the Port since 1971. To comply with section 2412, defendant engaged Reyes, who was licensed by the Authority and the Coast Guard for the Port, to pilot all its ships within the Port. The journey between the Port and the open sea, however, necessarily involves crossing the Sound of Vieques, in which the Port itself lies.[3] Ships can sail either to the north, thereby transiting the full length of the Sound, or to the south, thus crossing only a narrow one-and-a-half mile stretch of the Sound before reaching the open sea. In every instance, defendant's ships have taken the shorter southern route across the Sound. Although Reyes held no license expressly issued for the Sound, and licenses are valid only for the port for which issued, § 2403, defendant

---

1. The court decided only the issue of liability, postponing the entry of a money judgment until the relevant facts were presented, either by stipulation or hearing. The orders appealed from, see below, are therefore not appealable as final judgments under 28 U.S.C. § 1291. As, however, an action for pilotage fees is within the admiralty jurisdiction, *Ex Parte McNiel,* 80 U.S. (13 Wall.) 236, 242–43, 20 L.Ed. 624 (1871), and as the orders determined rights and liabilities of the parties, they are appealable under 28 U.S.C. § 1292(a)(3).

2. The licensing of ship pilots is regulated both by the United States Coast Guard, 46 U.S.C. § 211 et seq., and by the Puerto Rico Ports Authority, 23 L.P.R.A. § 2401 et seq. (1974 Supp.). The Coast Guard has promulgated detailed regulations regarding the qualifications and examination of pilots. 46 C.F.R. §§ 10.05–39 to 10.05–43. The Authority is also empowered to "approve rules and regulations to regulate the pilot service", § 2402, but at the time of the events in question, had not yet done so. There was evidence that the Authority "traditionally" relies, and in Reyes' case did rely, on the Coast Guard's examination and licensing of applicants in issuing its own licenses.

3. It is not questioned that navigation within the Sound itself is also governed by the compulsory pilotage provision, § 2412. The Sound is part of the navigable waters of Puerto Rico and its boundaries are delineated by lines of demarcation which are fixed by federal regulation. 33 C.F.R. § 82.245.

kept Reyes on board as pilot rather than employ a second pilot for the short leg across the Sound. Reyes would thus pilot defendant's ships beyond the entrance of the Port to and from a boarding point which was in the open sea approximately two miles away and one half a mile outside the Sound's southern boundary.

In this action plaintiff asserted that he was a licensed pilot for the Sound, although not for the Port, and that Reyes' Port license did not properly authorize him to pilot through the Sound on this approach to the Port. Under the theory advanced by plaintiff, defendant is in effect operating its ships in the Sound without a licensed pilot, in violation of section 2412. Since plaintiff himself had allegedly offered defendant his services,[4] which defendant refused, plaintiff claimed that defendant was liable to him for the statutory pilotage fees.[5]

■ Both parties filed in the district court motions for summary judgment, accompanied by affidavits, exhibits, and stipulations as to certain facts. On this record, the court in a written decision and order found for plaintiff on the issue of liability. *See* note 1 *supra*. Defendant then filed a "motion to vacate judgement and for reconsideration",[6] on the grounds of mistake, in-

advertence, and excusable neglect. In support thereof, it submitted additional affidavits and exhibits and purportedly disputed facts to which it had earlier stipulated. A hearing was held and the motion was subsequently denied in a second, more comprehensive written order. Defendant appeals from both the order of summary judgment and the denial of its subsequent motion. For the reasons hereinafter stated, we disagree with the judgment below.

We begin by considering Reyes' licenses. Reyes' Authority license, issued on October 1, 1971, certified that he "ha[d] given satisfactory evidence . . . that he is a skillful Pilot of Steam and/or motor vessels and can be entrusted to perform such duties in the waters of Yabucoa, Puerto Rico." Jose Ysern de la Cruz, chief of the Maritime Department of the Authority, stated in an affidavit that by issuing this license the Authority considered Reyes "skillful to bring in and take out vessels into the harbor entrance from three miles at sea". He also stated that "it has always been the policy of the Ports Authority, when licensing its pilots, that they be licensed for whatever port to board and unboard the vessels from sea to the port."

Reyes' Coast Guard license was issued on October 29, 1971,[7] for several Puerto Rico

---

4. Plaintiff wrote to defendant on the four different occasions offering his services. Whether this tender was legally sufficient is a question which we do not reach, see below.

5. 23 L.P.R.A. § 2414 (1974 Supp.) provides:
    "Every ship subject to pilot service as provided in sections 2412 and 2413 of this title, and every ship who requests and obtains said service without being subject to same, shall pay the following fees to the pilot rendering the service (or to the pilot in his stead who offers to render said services in the event that the ship's captain refuses the service, the ship being subject to such services):

    .    .    .    .    .

    (f) Twice the corresponding fee if the ship's captain refuses the service, the ship being subject to receive it."

6. This was not, in reality, a situation governed by Fed.R.Civ.P. 60(b) since final judgment had not been entered. Whether or not to reconsider its initial order and receive the additional documentary evidence was a matter within the sound discretion of the district court. The

court took the view that defendant was not to be relieved from the stipulations nor to be allowed to add to or modify them, citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and *Smith v. Ayer*, 101 U.S. (11 Otto) 320, 25 L.Ed. 955 (1879). It stated that "[a]ny discussion herein of additional documents or affidavits is only for the purpose of commenting upon the points raised by Defendant and is not to be interpreted as amending the Stipulation of Facts . . . which we hereinafter reconfirm". We accept that defendant remains bound by the stipulations, although we have felt free to take into account the additional affidavits and exhibits insofar as they do not conflict with the stipulations.

7. Despite the fact that Reyes' Coast Guard license was issued after his Authority license, Reyes was tested by the Coast Guard in late September and the Authority therefore could, and purportedly did, rely on the results of that examination before it issued its own license to Reyes.

harbors, including the Port. It provided that

> "Fructuoso Reyes having been duly examined and found competent by the undersigned, is licensed to serve as . . first class pilot of steam and motor vessels of any gross tons upon . . . Puerto de Yabucoa, Puerto Rico."

Another endorsement was later added, which read, "First class pilot from sea to Puerto de Yabucoa, Puerto Rico." Harry Oldford, who was at that time the Coast Guard officer responsible for the examination of pilot's license applicants, 46 C.F.R. §§ 10.02–1(b) and 10.02–5(g)(1) & (h)(1), stated, also by affidavit, that he had examined Reyes and that this license "automatically" authorized Reyes to pilot "through that section of the Sonda de Vieques on the Yabucoa range to the line of demarcation". The later endorsement, he added, did not broaden but merely clarified the original grant of authority. Thus, responsible officials of both the commonwealth and the federal agencies rather plainly believe that Reyes' license includes pilotage within the disputed territory in the Sound.[8]

Despite these interpretations, the district court concluded that Reyes' license did not authorize pilotage outside the entrance of the Port. It rested its conclusion on two grounds. It found first that, in the course of the application procedure for his Port license, Reyes had never been examined as to his knowledge of the Sound by either the federal or the commonwealth agencies. And although he had taken preliminary steps to procure a license for the Sound, he had not yet been examined for that application. The court noted that Coast Guard regulations, 46 C.F.R. §§ 10.05–42(a) and 10.05–43(a), require a written examination,

and Puerto Rico statutes, 23 L.P.R.A. §§ 2406, 2404 (1974 Supp.), a "careful examination", of an applicant's knowledge of the route and waters applied for. The court therefore concluded that the agencies did not have authority to license Reyes for the Sound and that any statement or endorsement which did so was ultra vires. Alternatively, the court found that the endorsement on Reyes' Coast Guard license, "from sea", referred only to the "sea buoy No. 2 marking the entrance to Yabucoa's channel", and so concluded that even on its face, the license did not authorize pilotage on the Sound outside the Port. For the reasons hereinafter stated, we respectfully differ with the court as to both conclusions.

In concluding that Reyes' license, if it was meant to cover the Sound, had been issued ultra vires, the court found that Reyes had never been tested for the Sound. In so finding, the court reviewed the examination which Reyes took for his Port license and determined that the chart sketch and aids to navigation list therein did not test Reyes' knowledge of the Sound between the Port and the boarding point. However, a Coast Guard officer stated by affidavit that he had examined Reyes with respect to the approaches to the Port, the process of docking a ship from the time of boarding at sea or inside the Sound, and the location of the boundary or line of demarcation between the high seas and the inland waters at the Port. Thus, according to the responsible Coast Guard authority, Reyes was tested regarding the approach through the Sound, and we cannot say that it is apparent that additional inquiry was required to determine Reyes' fitness to traverse this short stretch of open water up to the mouth of the Port. In such close circumstances at

---

8. Strictly speaking, it would appear that only Reyes' Authority, not his Coast Guard, license would be relevant under section 2412. However, we think the Coast Guard license must necessarily be viewed together with the Authority license, as the district court apparently did, because of the Authority's admitted reliance on Reyes' Coast Guard examination and license in making its own assessment of Reyes' qualifications. *See* note 2 *supra.* Cruz himself stated in a letter to Reyes in June, 1973, that

"the Ports Authority concurs with [the Coast Guard] interpretation that the indorsement in your federal license authorized you to pilot the ships which make their approach through the Sound of Vieques *to enter the Yabucoa Port.*" We therefore think that it is also proper to look to the language of Reyes' Coast Guard license, as did the Authority and the district court, in determining whether Reyes was authorized to pilot in this area of the Sound.

least, we think a court must accept official representations, without undertaking its own evaluation. *See The Panama,* 18 F.Cas. 1068 (No. 10,702) (D.Or.1861). Here, moreover, the controversy regarding the scope of Reyes' license arises in the context of a private action to recover pilotage fees from defendant, who has relied upon the official interpretation of the license, not, e. g., on direct review of the Coast Guard or Puerto Rico Ports Authority decision to license Reyes. Neither the Coast Guard, the Authority, nor Reyes, the parties most immediately interested in the license, have even been joined in this action. Plaintiff's challenge to the scope of Reyes' license is at best collateral. *Cf. Bower v. Eastern Airlines, Inc.,* 214 F.2d 623 (3d Cir.), *cert. denied,* 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954); *Interstate Natural Gas Co. v. Southern California Gas Co.,* 209 F.2d 380 (9th Cir. 1953); *Applewhite v. Jones,* 207 F.2d 701 (7th Cir. 1953), *cert. denied,* 347 U.S. 954, 74 S.Ct. 677, 98 L.Ed. 1100 (1954). *See also* K. Davis, Administrative Law Treatise § 18.10, at 613–14 & n.4. Collateral inquiry into agency action, while not completely precluded, is severely limited to only the most basic errors affecting the essential fairness of the action. *Bower v. Eastern Airlines, Inc., supra. See also Eagles v. United States ex rel. Samuels,* 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946); *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *Davis, supra,* at 615–19. Restraint would seem especially suitable when dealing with the niceties of pilot licensure, a subject which has been delegated to the agencies in question, not to the courts. Here any possible mistake was not so plain or so fundamental as to invite judicial correction. Once it was represented by the Coast Guard that Reyes had been properly examined, we think the court erred in going behind the license, actively reviewing on its own Reyes' examination, and rejecting the Coast Guard's representation.

■ Similar considerations lead us to reject the court's interpretation that the license on its face does not allow this very limited pilotage on the Sound. (No claim has ever been made that Reyes is authorized to pilot generally in the Sound.) The court's reading of the endorsement "from sea to Puerto de Yabucoa" rejects the Coast Guard's own interpretation, in which the Authority concurs. The court recognized this but ruled that the Coast Guard's interpretation was at best entitled to the weight of an expert opinion. The court, to be sure, receives some support from the statutory provision that licenses are valid only for the port for which issued. § 2403. However, the Coast Guard is more than a mere expert witness; it is entrusted by Congress with authority over the day-to-day technicalities of pilotage and navigation, and has been delegated the power to issue licenses. 46 U.S.C. § 211 et seq. Where, as is the case here, the agencies' interpretation of their own licenses is within reasonable limits, it may not be overriden, *see, e. g., Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Officials of both agencies expressly stated that it was the agencies' intention to license Reyes for the approach across the Sound. The approach was only one-and-a-half miles long and was not claimed to be particularly hazardous. There was also significant evidence supporting the officials' view that it was customary in the area for port pilots to board ships as much as three miles out at sea and take them into port. "Sea", as found in the endorsement "from sea to Puerto de Yabucoa", could reasonably refer to the waters outside the line of demarcation; waters outside a line of demarcation are elsewhere referred to as the "high seas". 33 C.F.R. § 82.1. Indeed, "pilot service" is defined to include "the service rendered to a ship by a port pilot helping the ship to enter and leave the port". 23 L.P.R.A. § 2103(u) (1974 Supp.). From all this, we conclude that the court erred by not accepting the agencies' interpretation, which was sufficiently expressed in the license, that Reyes' license authorized pilotage across this portion of the Sound. *Cf. Joslyn v. Nickerson,* 1 F. 133 (1st Cir. 1880). It would seem unfair to hold a defendant who has relied upon a license liable for

statutory pilotage fees because of an interpretation contrary to that of the issuing authorities. As Reyes was properly licensed, defendant was complying with section 2412 and is not liable to plaintiff for pilotage fees. We therefore need not reach the other arguments raised, regarding, e. g., Campos' own license and the efficacy of his tender of services.

*Reversed.*