José RIVERA, Plaintiff,

v.

M/T FOSSARINA, S/T GUADALUPE, et al., Defendants.

Civ. No. 85–0800 GG.

United States District Court, D. Puerto Rico.

June 12, 1987.

Harry A. Ezratty, San Juan, P.R., for plaintiff.

Hernando A. Rivera, Dohanie Sepúlveda, San Juan, P.R., Alexis D. Mattei, Hato Rey, P.R., Stephen R. Johnson, Bartlesville, Okl., Cheryl C. Burke, Washington, D.C., for defendants.

OPINION AND ORDER

GIERBOLINI, District Judge.

Plaintiff brought the present action seeking the payment of fees owed for pilot services allegedly rendered to defendants.

Plaintiff asserts an admiralty and maritime claim within the meaning of Rule 9H of the Federal Rules of Civil Procedure. Jurisdiction is invoked pursuant to 28 U.S.C. § 1333.

Now pending are two motions for summary judgment and the replies thereto filed by the various defendants. We will proceed to address each motion individually.

In determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir.1985); *Raskiewicz v. Town of New Boston*, 754 F.2d 38 (1st Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted only "if the pleadings, depositions, answers or interrogatories, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *General Office Products v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077 (1st Cir. 1986). However, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of fact. *Anderson, supra*, 477 U.S. at ——, 106 S.Ct. at 2510. If a dispute about a material fact is "genuine", that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party, summary judgment should be denied.

Applying this standard and upon close examination of the record, we find the following facts are uncontested.

1. Defendant Phillips Puerto Rico Core, Inc. (PPRC) time-chartered the M/T FELANIA and M/T FOSSARINA which visited the Port of Las Mareas on the southern coast of Puerto Rico near the city of Guayama on several occasions.

2. Plaintiff, José Rivera, a licensed pilot assigned to the Port of Las Mareas by the Ports Authority of Puerto Rico, provided anchorage instructions to the masters of the M/T FELANIA and M/T FOSSARINA via radio from the Las Mareas dock, or from a tugboat, but did not board either vessel to assist it in anchoring.

3. On each occasion for which plaintiff is claiming pilotage fees, these vessels were anchored approximately 2.5 nautical miles offshore from Las Mareas and .5 nautical miles south of Las Mareas sea buoy.

4. The service for which plaintiff is requesting pilotage fees is the sending, via radio, of anchorage instructions to the vessels from the Las Mareas dock, or from a tugboat, and not from on board the M/T FELANIA or M/T FOSSARINA.

Plaintiff argues that the aforementioned vessels were led by radio to an anchorage point well within the three mile territorial waters of Puerto Rico, and therefore, the vessels owe compulsory pilotage fees regardless of whether a pilot was on board or not. Conversely, defendants PPRC and Phillips Petroleum Company[1] argue that the vessels were anchored at a point approximately 2.5 nautical miles offshore and .5 nautical miles east-southeast of the Las Mareas sea buoy where a pilot's services are not required under the compulsory pilotage laws of Puerto Rico. Further, co-defendants contend that plaintiff's actions in sending anchoring instructions to the vessel's masters by radio from ashore or from a tugboat do not constitute pilotage services subject to compensation.

There is no controversy that Puerto Rico is a compulsory pilotage jurisdiction. Pursuant to 23 L.P.R.A. § 2412 (1982 Supp.):

> No alien ship nor any ship of the United States navigating under registration may enter or leave a harbor without obtaining

---

1. Co-defendants Shell Tankers B.V. and Citizens Trust Company have joined in the motion for summary judgment filed by these defendants.

pilot service from a pilot licensed by the Authority for the said harbor.

The Puerto Rico Ports Authority controls pilotage service and issues pilot's licenses in Puerto Rico. 23 L.P.R.A. § 2401 and § 2403. Furthermore, every ship subject to pilot service which is offered such service and refuses the service, must nevertheless pay the statutory pilotage fees. 23 L.P.R.A. § 2414.

Plaintiff contends that at the point where the vessels were anchored—approximately 2.5 nautical miles offshore and .5 nautical miles east-southeast of Las Mareas sea buoy—they were in the compulsory pilotage waters of Las Mareas harbor, and thus, were required to pay him pilot fees regardless of whether his anchorage services were accepted or not.

However, pursuant to a letter dated August 9, 1984, Mr. Carlos Soler Aquino, former Executive Director of the Puerto Rico Ports Authority, rendered an official interpretation of the Dock and Harbor Act of 1968, as amended, 23 L.P.R.A. § 2101 *et seq.*, and Regulation Number Three (3) as to the location of the compulsory pilotage waters at the Port of Las Mareas. It was the position of the Ports Authority that the Port of Las Mareas has no designated anchorage area and its limits are where Entrance Buoy Number One is located. Any vessels anchored outside the harbor limits, i.e. seaward of Entrance Buoy Number One, are not required to be assisted by a licensed pilot, and consequently, no pilotage fees need be satisfied. (*See* Exhibit A of motion for summary judgment which includes sworn statement of Mr. José R. García, the Chief of the Maritime Bureau of the Ports Authority).

█ It is axiomatic that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Executive Director of the Ports Authority is charged with the regulation of pilot service in the harbors of Puerto Rico to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the interpretation of these laws.

*Clarke v. Securities Industries,* —— U.S. ——, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). Therefore, the interpretation by officials of the Ports Authority of the Act and regulations is entitled to substantial deference by this court given the Authority's expertise and its regulatory power over pilotage in Puerto Rico. *Cf. Campos v. Puerto Rico Sun Oil,* 536 F.2d 970, 974 (1st Cir.1976).

█ Since it is uncontroverted that the point where the vessels were anchored was well seaward of Entrance Buoy Number One, and as such, outside the limits of Port of Las Mareas, the payment of compulsory pilot fees is not warranted.

Also, plaintiff is claiming pilotage fees for the sending of anchorage instructions by radio from the Las Mareas dock, or from a tugboat, and not from on board the M/T FELANIA or FOSSARINA.

Defendants contend that plaintiff's radio instructions from somewhere other than the bridge of the anchoring vessels do not constitute pilotage services for which Rivera is entitled to pilot fees. This position finds substantial support in and is consistent with the language of several provisions of the Ports Authority's Regulation No. 3 (Resolution No. 156 of May 14, 1975) promulgated under the Dock and Harbor Act of 1968.

█ Section 24(a) of said regulation provides, in part: "The pilot is an advisor *who joints (sic) the captain and the crew* in their navigational function ... *While the pilot is in the command bridge rendering his pilotage and advisory services,* his instructions and the Captain's orders, such as speed, bearing, stops, aft movements, anchorage and mooring, shall be obeyed." Section 24(e) states, in part: "Under no circumstances, except in cases of great emergency and while the same is overcome, shall a ship subject to pilot service pursuant to the law and its regulations, enter, leave or move around the harbor *without pilot service in the command bridge.*" Likewise, Section 30 in the pertinent reads: "When entering the harbor *the pilot shall stay on board the ship* until it has anchored or moored and the captain notifies

him that his services are no longer required. When leaving the harbor, *the pilot shall stay on board the ship until it has left the harbor* and the captain notifies also that his services are no longer required." From these provisions of Regulation No. 3, it is apparent that a pilot must be on board a ship and on the command bridge while carrying out his pilotage duties.

Moreover, the deposition of plaintiff's expert witness, Captain George A. Quick indicates that while performing pilotage service, a pilot must be on the bridge of the ship issuing orders to the helmsman and the engine. Dep. at p. 87. Quick testified that if a pilot leaves the bridge after giving instructions as to where to go and leaves the master to carry out those instructions, the pilot is not rendering pilot service. Dep. at 86-87. Quick also testified that a pilot at Las Mareas rendering pilot service should be on board the ship. If the pilot is not on the bridge issuing orders to the helmsman and the engine, he is not rendering pilotage service. Dep. p. 88. Quick further testified that for a pilot onshore to radio anchorage instructions to a ship a half mile southeast of the sea buoy would not constitute pilot service on the basis of the standard practice and would be both unusual and contrary to the norm. Dep. p. 91.

Clearly, under the present circumstances, we must find that plaintiff's anchorage instructions by radio to the vessels in this case do not constitute pilotage service, and consequently plaintiff is not entitled to the pilot fees requested.

Wherefore, it appearing that defendants have positively established that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law, defendants' motion for summary judgment is hereby GRANTED.

Co-defendants Puerto Rico Fuels, Tug Texan, Trans Gulf Towing Company and Blutco Barge and Towing Company have also filed a motion requesting the entry of summary judgment in their favor. Plaintiff has filed an opposition and defendants have filed a reply thereto.

The following facts are uncontroverted:

1—During the period of January through April, 1984, co-defendant Tug Texan called at the Port of Las Mareas on various occasions.

2—At that time, co-defendant Blutco Barge and Towing Company was the charter of the Tug Texan and Trans Gulf Towing Company was the owner.

3—On March 13, 1984, upon arrival at the Port of Las Mareas co-defendant Puerto Rico Fuels requested pilot services for the barge POSEIDON which came into the port as part of an integrated tug/tow combination. The barge was towed into the port by a tugboat, the Tug Texan.

4—On said date, the master of the Tug Texan refused plaintiff's services on board the tugboat and requested that plaintiff board the barge.

5—Plaintiff advised the master of the Tug Texan that he would board the barge, but that pilotage fees would be invoiced for both the tugboat and the barge due to port regulations.

6—As per invoice dated March 4, 1985, pilotage fees were requested for the barge POSEIDON and the Tug Texan, for $346.50 and $297.00, respectively.

7—Puerto Rico Fuels paid the amount invoiced for the pilotage of the Barge POSEIDON, but refused payment for the amounts relative to the pilotage of the Tug Texan.

In summary, there is no controversy that the pilotage service was provided, that the pilot (plaintiff) rendered such services from the barge, that plaintiff submitted invoices for both the pilotage of the barge and the tugboat, and that payment was made only for the pilotage of the barge. The issue here is whether a pilot can invoice separately for the tug and barge although the entry of the tugboat and the barge is an integrated tug/tow combination requiring one single operation.

Addressing this particular issue, plaintiff argues that as per letter dated May 20, 1981, the former Executive Director of the Ports Authority, Mr. Wilson M. Loubriel interpreted Resolution No. 387 of August

19, 1980, as being dispositive as to pilotage fees in a barge/tugboat operation. He opined that pursuant to Resolution No. 387 the barge and tug were separate units and had to pay their fees individually.

█ Conversely, defendants contend that Resolution No. 387 was expressly repealed by Resolution No. 83–04 approved on March 1, 1983, which governs this case. It is also argued that the applicable regulations do not contemplate the issue of whether a pilot can invoice separately for the barge and tug, although they do provide a fee for self-propelled ships in an inoperative condition. Defendants further argue that it was the Ports Authority's intention to eliminate the payment of double fees for a single piloting operation involving two separate units, and that this is evidenced by the third paragraph of Mr. Loubriel's letter which states:

> Whether this is fair or not is something to be discussed in future hearings or through a request to the Executive Director for changes in fees and regulations.

Moreover, in Resolution No. 83–04 which expressly repealed Resolution No. 387 and established a new pilotage structure, no provision was made as to fees to be charged for an integrated tug/tow combination requiring one operation.

It has been long established that the flotilla as a whole, comprising tug and tow, is considered a unit. *See e.g., The Gladys,* 144 F. 653 (2d Cir.1906). Legally speaking, barges are considered under the control of the tug's licensed crew. *Jackson v. Moran Maritime Assocs.,* 1980 AMC 2134 (S.D. Fla.1980).

Similarly, in *Jackson v. Marine Exploration Co., Inc.,* 583 F.2d 1336 (5th Cir.1978), which involved the construction of a Florida statute providing for an award of pilotage fees to the first licensed pilot to "speak to" [2] a vessel, irrespective of whether the vessel avails itself of those services or not, the court held that "speaking to" the tug was, in fact, the same as "speaking to" the barge. The court reasoned that to hold otherwise would allow shippers to evade pilotage regulations by leaving vessels or tow unmanned so that could not be spoken to in the first place nor subsequently boarded having never been spoken to. *Id.* at 1349. Likewise, the court interpreted that Florida's compulsory pilotage statute authorized the imposition and collection of pilotage fees for unmanned barges.

█ In the instant case, however, neither local statutes nor regulations contemplate the imposition of separate fees for pilotage services of a tugboat and barge forming a single unit.

Wherefore, it appearing that defendants have positively established that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law, defendants' motion for summary judgment are both GRANTED.

The Clerk shall enter judgment dismissing the present action.

SO ORDERED.

---

**2.** In the maritime and pilotage context, this phrase means to offer or tender services.