TWO HUNDRED BUSHELS OF CORN (UNITED STATES v.). See Case No. 16,-586.

---

TWO HUNDRED BARRELS OF WHISKEY (UNITED STATES v.). See Case No. 16,585.

## Case No. 14,300.

### The TWO MARYS.

[10 Ben. 558.] 1

District Court, S. D. New York. Oct., 1879.

#### PRACTICE IN ADMIRALTY—DISCHARGE OF ATTACHMENT—OPPOSING CLAIMANTS—RETAKING PROPERTY INTO CUSTODY—PRACTICE.

1. A libel was filed against a domestic vessel on January 25th, 1879, to recover for supplies furnished to her. Process was issued to the marshal, who returned that he had attached the vessel. At the libellant's request, no keeper was put by the marshal on board the vessel, which was then undergoing repairs at City Island. No notice to appear was ever published. On Sept. 16, 1879, on motion of the libellant's proctor, an order was made that the marshal take the vessel into his custody under the original process and put a keeper on board. The marshal did so, and removed the vessel from City Island to a pier in the East river. H., the shipwright, who had been repairing her, appeared as a claimant, averring that when the vessel was seized by the marshal, he was in possession of the vessel, on which he claimed a common law lien. He gave a bond under the act of 1847, and an order was made in the usual form for the release of the vessel, and the marshal gave him a notice to the keeper on the vessel to discharge her, with which he went to the vessel. C., the master of the vessel, who was also one-sixteenth owner, was on board and so was the proctor for the libellant. A controversy arose between them which resulted in H.'s being arrested by a police officer and compelled to leave the vessel. He had shown the marshal's notice to the keeper, but refused to leave it with him or to show it to the other parties. After his arrest the keeper left the vessel, leaving the vessel in the possession of the master. H. then moved the court for an order directing the marshal to retake the vessel and restore her to him. The master opposed the motion, claiming that he and not the alleged claimant was in possession of the vessel when the marshal retook her under the order of Sept. 16th. The libellant also opposed the motion, denying that he had had notice of the claimant's application to bond the vessel. Pending the motion the court made an order directing the marshal to take the vessel into custody and hold her till the determination of the motion: *Held*, that it is the duty of the court, on the dissolution of an attachment against a vessel under its process, to cause the vessel to be restored to the party who was in possession at the time when she was taken under the process

2. Where there are two different parties, each claiming to have been so in possession, the marshal ought not on the dissolution of the attachment to deliver her to either without the order of the court.

3. In this case, the order for the release of the vessel had not been duly executed, and the court therefore had jurisdiction to order the marshal to take her into his custody again under the original process.

4. The libellant's default as to the bonding of the vessel should be opened, and he have leave to file objections to the right of H. to appear as a claimant.

5. New publication of notice to all parties to appear should be had, on the return of which C., the master, would have the opportunity to appear and aver his possession at the time of seizure;

and the question between him and H., could be then properly determined.

In admiralty.

Geo. A. Black, for the motion.

H. B. Kinghorn and Thos. W. Wyatt, opposed.

CHOATE, District Judge. This is a libel for supplies and materials furnished by David W. McLean to a domestic ship for which a lien is claimed in the libel under the law of New York. The libel was filed Jan. 25, 1879. On this libel a monition was issued, returnable Feb. 11, 1879, of which the marshal made return that on the 29th of January, 1879, he "attached the schooner at Hawkins' Dock, City Island." An order for publication of notice for all persons in interest to appear and intervene was made on the 25th of January, but no publication has been made. It appears by affidavit that at the request of the libellant the marshal put no keeper on board at the time of the service of the process; that the vessel was then hauled out of the water undergoing repairs and not in a condition to be navigated at all or to float in the water. Sept. 16, 1879, on motion of the libellant's proctor an order was made that the marshal take the schooner into his custody under the original process and place a keeper in charge. Thereupon the marshal resumed the custody of the vessel and removed her to a pier in the East river. On the 20th of September, one Hawkins appeared as claimant, averring in his claim that at the time of the seizure he was in possession of the schooner, reconstructing her, and claiming a common law lien therefor to the amount of $5,000. He offered a bond under the act of 1847 [9 Stat. 181], in double the amount of libellant's claim, and gave notice to libellant's proctor of the justification of his sureties for the 22d of September. The libellant's proctor did not appear and the bond was approved and an order was made in the usual form for the release of the vessel on the same day. The marshal thereupon gave to the claimant's proctor a notice to the keeper to discharge the vessel. The claimant took a tug and proceeded with this notice to the vessel, exhibited the notice to the keeper but declined to give it up. He met there the libellant's proctor, and one Crowley, who claims to have been previously appointed master of the schooner and who also appears to be the owner of one-sixteenth part of her. It is very difficult to ascertain with certainty from the conflicting affidavits, what occurred on the vessel at that time. It is sworn by witnesses on behalf of the libellant and Crowley, that the claimant did not demand the delivery of the schooner to him; but I am satisfied that the libellant's proctor and Capt. Crowley, as well as the keeper, understood that he was there for the purpose of taking possession of the schooner upon the discharge of the attachment. A

controversy appears to have arisen, Crowley and libellant's proctor insisting that Hawkins, had no right to be there. The result of this controversy was that Hawkins, the claimant, was by the procurement of these parties or one of them taken under arrest by a police officer and compelled to leave the vessel. He seems to have refused to exhibit his authority to receive the vessel to libellant's proctor, but the evidence shows concert of action between the libellant and Capt. Crowley, the libellant now claiming to be the principal owner and Crowley as master claiming to act by his appointment and under his directions. After Hawkins left the vessel the keeper went away, leaving Capt. Crowley on the vessel, who claims now to have been left in possession by the discharge of the attachment. The result is in reality that the libellant has, or appears to have through Capt. Crowley, possession of the vessel; and through her seizure on his libel and her subsequent discharge, the claimant, if he was the party in possession, has been dispossessed. This is a motion on behalf of the claimant that the marshal retake the vessel and restore her to him, and for other relief. The libellant and the said Crowley appear to oppose the motion.

Although the customary order for discharging an arrest of the vessel is simply that she be released from custody, yet it is the duty of the court, on the dissolution of an attachment under its process, to cause the vessel to be restored to the party who was in possession at the time the officer of the court took her into custody. The process of the court in its execution and discharge must not be used as the means indirectly of taking a vessel from one party and giving it to another. In the case of The Neptune, 3 Hagg. Adm. 132, Sir John Nicholl says: "Had bail been given to the action for wages, the ship would be delivered up, upon the removal of the arrest, to the party previously in possession, whoever he might have been." Mr. Dunlap in his treatise says: "In the admiralty courts of the United States, in all civil causes, except perhaps those of bottomry and by hypothecation, it is usual for the court upon application to deliver the property to the claimant from whose possession it has been taken, upon bail or stipulation with ample security, conditioned in some cases for the restoration of the property, in others for the payment of the amount which may be decreed to the libellant and his costs." Dunl. Adm. Prac. p. 166. I cannot agree with the counsel for the libellant that the marshal's duty is simply to withdraw his keeper and leave the vessel, without regard to whether she thereby falls into the hands of her owners, or strangers, or river thieves. It is his duty under these authorities upon the termination of his custody to replace her in the possession of the party from whose possession

he took her. An admiralty suit in rem proceeding in proper course is a suit against all the world, against whoever has or claims to have any interest in the vessel, and where the proper notice is given, including the publication of notice to all persons interested to intervene according to the rules and practice of the court, all persons having an interest who do not appear are in default; and a claimant, who does appear and gives bond for value or under the act of 1847 for double the amount of libellant's claim and whose right to intervene as claimant is not challenged by the libellant or some other party intervening, is to be held to be by the acquiescence of all the parties to the suit the party entitled to the possession. A claim thus made is an application to the court for the possession of the vessel on giving bail. Thus in the case already cited, the court says: "The warrant of arrest calls upon all persons who have an interest to appear and show cause, and if the party in possession at the time the warrant was executed is no longer in possession, it is. I repeat, his own default; he has, by not appearing to give bail, acquiesced in being dispossessed and has thus allowed the proceeds arising upon the sale of the ship to come into the registry of the court." 3 Hagg. Adm. 132.

Now in this case it appears that there are two parties who claim to have been in possession at the time the marshal took the vessel under the process of the court, the claimant Hawkins, who has appeared, and the captain or the alleged captain and owner Crowley, who has not appeared as claimant but only to resist this motion. If publication had been made and the default of all persons not appearing had been entered, Crowley could not dispute the right of the claimant Hawkins to the possession of the vessel upon discharge of the arrest. But there having been no publication, I do not think he is in default, and he should have an opportunity to contest Hawkins' right to appear as claimant, which is based upon an alleged actual possession of the ship as a lienor at the time of the arrest. The libellant cannot of right now dispute Hawkins' right as claimant, because he made no objection to his appearing as claimant, when served, as the record shows that he was served, with notice of the justification of the claimant's sureties, which is in effect a notice of Hawkins' appearance as claimant. But as it appears by affidavit that the notice of justification did not in fact reach the libellant's attorney till after the time fixed therefor, he is entitled to have that default opened and now to make objections to Hawkins' appearance and claim. When such objections are made the practice is to refer the question to the clerk or a commissioner.

But the course pursued in this case was irregular. The owners of the vessel not having appeared nor being in default, no order should have been made which in effect gives up the vessel to a party claiming to be not the owner but merely in possession as a lienor. If the libellant refused and neglected to cause that publication to be made, the claimant should have moved that the libel be dismissed for want of prosecution and to have compelled the libellant to go on with his suit and procured the default of the owners, or their appearance, or he would have been allowed to have the publication made on his own motion. Still, the order that was made was not properly executed. If it required the delivery of the vessel to any party it was to the party who had appeared and had been allowed to bond the vessel. But if in such a case the marshal finds that there are contesting parties claiming possession, I think ordinarily he ought not to deliver her to either without the direction of the court. Such a question should be settled before the release of the vessel from custody. It is most unseemly that the retreat of the marshal should be the signal for rival claimants to rush in and contest the possession of the ship with each other on her decks. I think, therefore, that the order of the court for the release of the vessel has not been duly executed. The marshal ought not to have withdrawn his keeper after a party who had been admitted to appear and bond the vessel and who had exhibited to him the order for her release had been excluded from the ship.

It is claimed however that the court has now no jurisdiction to retake the vessel; that the marshal having left her in the possession of Crowley, who thereupon took possession, cannot be disturbed except by an action for that purpose. But it seems to me competent for the court to order the marshal to retake the vessel as under his original process, if the order for her release has not been duly executed. The vessel was in the custody of the court and that custody has never been properly and lawfully terminated. And as she remains within the jurisdiction, and as she is still in the hands of the party to whom she was improperly delivered and who actively, but under a mistake as to his rights procured such improper delivery, and no new rights appear to have intervened, I am of opinion that the court has power to direct the marshal to resume the custody. In fact, pending this motion, an order was made requiring the marshal to take her again into custody and hold her till the determination of this motion, and she is now held under that order. See The Union [Case No. 14,346].

The proper order to make seems to be that the order for the release of the vessel be vacated, as improvidently granted before a publication and default; that the marshal continue to hold her under his original process; and that the libellant's default be opened and he be allowed to file objections to Hawkins's appearance as claimant. A new order of publication should be made, the return-day having passed.

If Crowley voluntarily appears as claimant or comes in upon the return day of the notice by publication, he will then have the rights of any claimant, averring his possession at the time of seizure, to apply to the court for leave to bond the vessel, and the question of possession between him and the other claimant, Hawkins, can be properly tried. A great deal of the evidence by affidavit has been directed to the points that the libellant's claim is not such as gives him a lien enforceable in this court, and on the other hand that Hawkins had no common law lien and therefore no right to the possession of the vessel, as against the owners, because he has been fully paid, and because the work was done on the personal credit of the libellant and not on the credit of the vessel. These questions cannot be now entertained. They cannot be tried on affidavits. The first is an issue to be tried in the cause, if properly raised by the pleadings. The second may perhaps be properly inquired into upon trial of the objections that may be filed to Hawkins's appearance as a claimant. Let an order be entered in conformity with this opinion.

[NOTE. An order of reference was accordingly entered. Upon exceptions to the report of the referee, the court decided that Hawkins had a possessory lien upon the vessel, which entitled him to intervene as claimant. 10 Fed. 919. On other motions for leave to file petitions to intervene, see 12 Fed. 152, and 16 Fed. 697.]