## THE TWO MARYS, etc.

*District Court, S. D. New York.*   May 26, 1883

1. LIENOR IN POSSESSION—PART OWNERS.
   Where a groundless libel is filed by part owners, and seizure of the vessel is procured to be made for the purpose of wresting her from the possession of a shipwright having a possessory lien for repairs, and there is no other *bona fide* defendant, the lienor should be permitted to defend to procure a dismissal of the fraudulent proceedings, and the restitution of the vessel to his possession.

2. SHIPWRIGHT—LIEN FOR REPAIRS—COMMON LAW.
   A common-law possessory lien may be acquired for repairs where the vessel is lawfully delivered into the possession of the shipwright by part owners having the lawful custody and control of her, though such repairs, if beyond what is necessary, are not binding upon the interests of non-assenting part owners.

3. SAME—STATE STATUTES.
   A shipwright may acquire a possessory lien co-extensive with the rights of the part owners who had possession and ordered the repairs, and under the state statute authorizing a judicial sale to enforce such liens, the shares of the part owners ordering the repairs may be sold by proceedings in admiralty. *Semble* otherwise as to mere maritime liens.

4. PRACTICE—DELIVERY OF VESSEL.—BOND.
   The vessel having been delivered during the pendency of the action to one of the owners under a bond for her return in the sum of $7,000, and the vessel meantime being lost, on dismissal of the libel a reference was ordered to ascertain the amount due the lienor. that the same might be ordered paid to him under the bond.

In Admiralty.

*H. B. Kinghorn,* for libelant.

*Scudder & Carter* and *Geo. A. Black,* for claimant.

BROWN, J.   The facts and most of the legal questions involved in this case have been determined upon previous hearings of the different matters involved in this much-litigated cause. See *The Two Marys,* 10 Ben. 558; S. C. 10 FED. REP. 919, and 12 FED. REP. 152.

The libel was filed on the twentieth of January, 1879, upon a claim of $365.38 for supplies furnished to the schooner during the year 1878. At the time of filing the libel the libelant was himself the owner of seven-sixteenths of the schooner; and her captain, who, as all the subsequent proceedings show, was acting in concert with him, was the owner of one-sixteenth. Hawkins was then in possession, engaged in repairing and enlarging her, upon the employment of the libelant and Capt. Crowley. The libel was filed, as Hawkins testified that the libelant told him, to facilitate the libelant's purchase of the shares of the other owners, who did not consent to the repairs. The marshal did not take possession of the vessel; the repairs were continued by the libelant's direction, and he subsequently purchased all the remaining interests save one-sixteenth, owned by Wheaton, of Philadelphia. On the sixteenth of September, 1879, without notice to Hawkins, the marshal was directed to arrest the vessel and take her into his custody, which was done. The object of the arrest, as subsequent events clearly show, was to get the vessel out of the possession of Hawkins, whose bill of repairs was still partially unpaid. Hawkins appeared as claimant, and gave a bond for the libelant' claim.

When the order was given releasing the vessel from arrest, Capt. Crowley, who, on October 20, 1879, had filed his claim to the vessel as owner of one-sixteenth, claimed to have been in possession at the time of the arrest of the vessel, and he was then on board; and upon the controversy thereupon arising as to who should have possession, the marshal was ordered to retake her into his custody. In the mean time exceptions were filed to the right of Hawkins to appear, on the grounds—*First*, that nothing was due him; *second*, that his repairs were made on the credit of the libelant; *third*, that he had no lien, that he had never been in possession, and, if he had, that it had been surrendered to Capt. Crowley before the arrest of the vessel. A reference was ordered to take proof as to Hawkins' right to appear, upon which a good deal of testimony was taken upon all these points, and upon the hearing on the exceptions, and the evidence so taken, this court held that, at the time of the arrest, Hawkins was in possession of the vessel, and had a lien upon her for a balance due to him for the repairs, for which he was entitled to intervene as claimant. 10 FED. REP. 919.

Pending the above reference an order was made, on the thirty-first of December, 1879, on the application of Crowley, with the

consent of the libelant, whereby the marshal was ordered to deliver the vessel to Crowley, upon his filing a stipulation in the sum of $7,000 for her safe return to the custody of the marshal, if so ordered, "or, in default of such return, if ordered, that the said Crowley will deposit the sum of $7,000, to be held subject to the same lien or claim which said Hawkins now has on said vessel." On this order Crowley, on the twelfth of February, 1880, gave a bond with two sureties, in accordance with the terms of the order.

In the petition and answer of Hawkins it is averred that the libelant was a part owner of the vessel at the time the supplies were furnished, and that he had no lien on the vessel therefor; and there is evidence to that effect. No other answer has been filed to the libel by either of the other owners, although Crowley answered the petition and claim of Hawkins. The cause having been brought to a hearing, counsel for the libelant stated that he offered no evidence in support of the libel; and it was admitted that the Two Marys had been lost. The evidence taken under the order of reference in regard to Hawkins' lien and possession was offered, together with some further evidence from the libelant in relation to the claim of Hawkins, and his alleged possession.

An elaborate brief has been submitted by the counsel of the libelant, who also represents the sureties in the stipulation given by Crowley, in regard mostly to the points already determined by the court upon the hearing on the exceptions. I do not find in his brief, or in the additional testimony, any sufficient reason for changing the decision already made on the several points involved. No evidence being offered in support of the libel, it must be dismissed, with costs.

The decision of BLATCHFORD, J., in the case of *The B. F. Woolsey*, 4 FED. REP. 552, 558, to which repeated reference has been made by counsel for the defendants, was not an adjudication that under our state statute of May 8, 1869, a common-law possessory lien could not be enforced in admiralty, but only that the remedy provided by that act was not a common-law remedy, and that it was not competent, therefore, for the state courts to administer the statute remedy upon such liens when arising out of maritime contracts, since on this class of contracts all remedies, save common-law remedies, must under the United States constitution be sought in courts of admiralty.

In the subsequent case of *The B. F. Woolsey*, 7 FED. REP. 108, 116, it was adjudicated in this court by my learned predecessor, upon what

seem to me to be sound reasons, that under the state act, as well as independent of it, following the case of *The Marion*, 1 Story, 68, a libel and sale of a vessel retained for a common-law possessory lien can be had in courts of admiralty. The statute of this state passed in 1869 seems to me plainly designed to convert the common-law possessory lien from a merely passive, detaining lien (*In re Wilson*, 12 Fed. Rep. 235, 238,) into an active one, capable of enforcement by judicial process for the satisfaction of the lienor's demand. It is plainly competent for the state legislature to impart this additional quality to the common-law possessory lien itself, and thus enlarge its character; and when this has been done, courts of admiralty may and ought to recognize and enforce it, according to their own remedies, and forms and modes of proceeding, on the same principle on which they recognize and enforce the liens given by state laws for supplies in domestic ports, in cases where the maritime law gives no such lien. *The Lottawanna*, 21 Wall. 558, 580; *In re Long Island, etc.*, 5 Fed. Rep. 599, 609.

If the vessel were still in custody she would have been ordered, on dismissal of the libel, to be returned to the possession of Hawkins, from whose possession the court has found that she was taken at the time of her arrest, on the sixteenth of September, 1879; and this would be so whether Hawkins had appeared as technical claimant, or as intervenor under rule 34, unless a sale was ordered upon his petition. In *bona fide* litigations between the owners of a vessel and other persons who have only maritime liens and are not in possession, but who have caused her arrest, there is not, ordinarily, any occasion for a mere bailee in possession, having a lien for repairs, to appear as claimant of the vessel, since his interest will be sufficiently protected by the court on any sale of the vessel that may be made, or by security taken in the cause upon his intervening under rule 34, for his interest only; and the latter is, therefore, usually the proper course. *The Harmonie*, 1 Wm. Rob. 178; *The Gustaf*, Lush. 506; *Cargo ex Galam*, Brown & L. 167, 181; *The Two Marys*, 10 Ben. 563; [S. C. 10 Fed. Rep. 919, and 12 Fed. Rep. 152.] But where it appears from the evidence, and the whole history of the case, that the suit is collusively instituted between some of the owners themselves, without legal right, and for the fraudulent purpose originally of coercing absent dissenting owners into a sale of their interests to the libelant, and, after this has been mainly accomplished, that it is still further prosecuted and the vessel taken into the cus-

tody of the marshal, at the instigation of her owners, for no other purpose than to wrest her from the possession of a bailee having a lien on her for repairs, without paying the amount due him, and there is no other *bona fide* claimant, and no *bona fide* controversy except with the bailee in possession, the latter must, *ex necessitate*, be permitted to defend as claimant, to procure the dismissal of the groundless and fraudulent proceedings, and the restoration of the vessel to his possession, if still in custody, or payment from any security given in lieu of the vessel in the progress of the cause. *The Regina del Mare*, 1 Brown. & L. 315.

As respects the enforcement of a lien upon less than the entire vessel, it being found that Wheaton, owner of one-sixteenth, had dissented, and that the repairs, being beyond what were necessary, were not therefore binding upon him, it must be observed that the decisions in this case, and the opinions heretofore rendered, (10 FED. REP. 919; 12 FED. REP. 152,) relate solely to a common-law possessory lien, and are not designed to refer at all to maritime liens only, existing independent of any possession by the lienor. In the latter case it may well be that no mere maritime lien would be recognized or enforced upon a part of the vessel only. Repairs or supplies for which such a lien is allowed are limited to what are necessary, and such as are authorized either by all the owners, or by the implied authority of those who are in charge of the ship. If the maritime lien, moreover, were sustained on a part of the vessel only, its enforcement might involve taking the vessel away from the possession of the owners whose shares were not bound by the supposed lien, which would seem to be anomalous and inadmissible. No such questions, however, arise in relation to the enforcement of a common-law lien in favor of a bailee in possession, though all the interests in the ship be not bound thereby. All that is intended to be decided in the present case in that respect is that where the owners of certain shares, (in this case of fifteen-sixteenths,) who are in lawful possession and management of the ship, deliver her to the lawful possession of a shipwright, and authorize repairs upon her, whether necessary or not, the person making the repairs, being in lawful possession of the whole vessel, may retain her until his bill is paid; and if the remaining owner dissent to the repairs, the lienor may, under the state act of 1869, enforce his lien in admiralty by a sale of the interests of those who employed him, and the vendee will thereby acquire a property and possession co-extensive with theirs, and no more.

In the present case the bond executed by Crowley for the return of the vessel, or the deposit of money in the registry sufficient to cover Hawkins' claim, supersedes all questions relating to a sale.

The schooner having been lost since her delivery by the marshal to Crowley on his bond for her re-delivery if ordered, she cannot now be returned to the possession of the marshal or of Hawkins according to the stipulation given by Crowley; and the sureties in his bond, Crowley being dead, must therefore deposit in the registry the amount found due to Hawkins, with interest and costs. This deposit, it was ordered, should stand "subject to the same claim or lien which Hawkins then had, if any, against the vessel." It was to be a security for his lien, if he was adjudged to have any. The court has adjudged that he had a lien on the schooner; and the amount required to be deposited to cover his claim, when that amount is ascertained, must, after its deposit, be delivered to Hawkins, as the vessel itself would have been delivered had she been still in custody.

If the amount due to Hawkins is not agreed on, an order of reference may be taken to ascertain the amount.