## BIGELOW v. NICKERSON.

(Circuit Court of Appeals, Seventh Circuit. October 12, 1895.)

### No. 216.

1. DEATH BY NEGLIGENCE ON NAVIGABLE WATERS—JURISDICTION OF THE STATE —APPLICATION OF STATE LAWS.

If a negligent act causing death occur upon waters within the jurisdiction of a state, the laws of the state in respect to death by negligence govern the rights of the parties.

2. NAVIGABLE WATERS—HIGH SEAS—LAKE MICHIGAN.

Lake Michigan, which lies wholly within the territory of the United States, is not a "high sea," in the sense that it is open and unenclosed, and a free highway of adjoining nations or peoples. It is under the exclusive dominion of the United States, and is free to the commerce of other nations, not by nature, but only by the grace of our government.

3. SAME—JURISDICTION OF STATES OVER LAKE MICHIGAN.

The rights of sovereignty of the states bordering upon Lake Michigan are not limited by the rule of international law, which restricts the exercise of sovereign rights to a belt extending three miles from the shore. On the contrary, their right to legislate, and to enforce their laws on the waters of the lake, is plenary, within the boundaries prescribed by their organic acts, subject only to the paramount right of the federal government to regulate navigation and commerce between the states and with foreign nations.

4. SAME—CONSTITUTIONAL LAW.

The sovereignty of the state of Wisconsin extends to the middle of Lake Michigan, and its laws, so far as they do not conflict with the laws of the United States passed in the regulation of commerce and of navigation, are operative within the boundaries of that state. Therefore the state statute, giving a right of action for negligence resulting in death, governs in cases arising upon the lake within the boundaries prescribed.

5. ADMIRALTY JURISDICTION—RIGHTS CREATED BY STATE LAWS—ENFORCEMENT BY FEDERAL COURTS.

The Wisconsin statute, giving a right of action in case of death by negligence, contains a proviso that "such actions shall be brought for a death caused in this state, and in some court established by the constitution and laws of the same." Rev. St. § 4255. *Held*, that the latter part of the proviso is an attempted condition or limitation upon the right previously granted, which would operate to exclude the jurisdiction of the federal courts, and is therefore void. Showalter, Circuit Judge, dissenting, on the ground that this proviso is not a limitation upon a general right; that the statute, including the proviso, merely creates a new right, within specified boundaries, the effect being that no right of recovery existed when the action was brought in a federal court.

6. COLLISION—STEAMER AND TOW WITH SAIL—DUTY OF STEAMER.

A steamer with a long and unwieldy tow is bound to take especial care to avoid dangerous proximity to an approaching sail, and, in case of collision, the burden is upon her to prove that the same was due to the fault of the other vessel. 59 Fed. 200, affirmed.

7. SAME—ERROR IN EXTREMIS.

A change of course by a sailing vessel, in the presence of imminent danger created by the wrong maneuver of a steamer with a tow, is not such a fault as will preclude recovery for an injury to the sailing vessel. 59 Fed. 200, affirmed.

8. SAME—OMISSION TO SHOW TORCH.

The failure of a sailing vessel meeting a steamer to show a torchlight, if required by the regulations, is immaterial, where the same, if shown, would have disclosed nothing not known without it, so that its absence in no way contributed to produce the collision. 59 Fed. 200, affirmed.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

This was a libel in personam, exhibited in the court below by the appellee against the owner of the steamer Robert Holland, claiming damages for the death of Erik Anderson, in a collision between the schooner William Aldrich and the barge Parana, which barge, with the barge Stevenson, was at the time in tow of the steamer Robert Holland. The collision is asserted to have been caused by the fault of the Robert Holland. The collision occurred at about 5 a. m. of the morning of November 1, 1891, under the following circumstances: The Aldrich, a three-masted schooner of 20 tons burden and laden with lumber, was proceeding on a voyage from Nahma, Mich., bound for the port of Milwaukee, Wis., having three jibs, a foresail, and a mainsail set, and with mizzen furled. The wind was northwest, and fresh. The vessel was on a course S. by W. ½ W., and was abreast of, and some six miles distant from, Pilot Island and from the Wisconsin shore, and about a like distance north of Canna Island light. The steamer Holland, having the barges Stevenson and Parana in tow astern, and in the order mentioned, all being light, was upon a voyage from the port of Chicago to Ashland, on Lake Superior. Her course was N. N. E. The barge Stevenson carried a foresail and staysail, and the Parana a foresail only. The combined length of the tow was about 1,800 feet. The Holland had the usual green and red lights in proper position, and also properly exhibited a white light, indicating a tow. The barges had their side lights properly placed, screened, and burning brightly. The proper signals upon the Aldrich were also set and burning. The schooner lookout reported the white light of the steamer about a point on the lee bow of the schooner, and distant some 15 miles, and afterwards saw and reported the steamer's red light distant about 5 miles, and afterwards, when the steamer was about one-half mile away, he reported the steamer's green light over the port or lee bow. Each vessel claims to have kept her course. The Holland claimed that if no change had occurred in the course of either vessel, she would have passed to the windward of the schooner; that, when about 100 feet away

from the schooner, the Holland's wheel was put to starboard, changing her course to the windward a point and a half, and she claims to have passed the schooner some 500 feet to windward, and that the latter suddenly came up into the wind and struck the tow line between the barges, and then drove on to the Parana. The schooner was struck on her port bow between the stem and cathead, her bows were carried away, and she filled with water. Anderson, who at the time was off watch, and asleep in the forecastle, was drowned. The schooner claimed that, seeing the red light of the steamer, it was supposed the latter would pass to leeward; that such was, in fact, the purpose of the steamer; that she had crossed the point of intersection of the courses of the two vessels, when her course was changed in an attempt to pass to windward, which, so far as the steamer was concerned, was accomplished, but that the maneuver was not resorted to in time to make it effectual as to the tow; that, when the collision was seen to be inevitable, the schooner, to ease the blow, or to escape, if possible, the stern of the barge Parana, put her wheel up to enable the schooner to fall off, but that the effort was ineffectual. It was claimed by the Holland that the Aldrich, instead of putting her wheel up, put it down, and luffed up into the wind. The combined speed of the vessels was about 15 miles an hour. The libelant claimed to be entitled to recover of the libelee under the provisions of sections 4255 and 4256 of the Revised Statutes of the State of Wisconsin, which are as follows:

"Sec. 4255. Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state, and in some court established by the constitution and laws of the same.

"Sec. 4256. Every such action shall be brought by, and in the name of, the personal representative of such deceased person, and the amount recovered shall belong and be paid over to the husband or widow of such deceased person, if such relative survive him or her; but if no husband or widow survive the deceased, the amount recovered shall be paid over to his or her lineal descendants, and to his or her lineal ancestors in default of such descendants; and in every such action the jury may give such damages, not exceeding five thousand dollars, as they shall deem fair and just in reference to the pecuniary injury resulting from such death, to the relatives of the deceased specified in this section."

The court below pronounced for the libelant (The Robert Holland, 59 Fed. 200; Nickerson v. Bigelow, 62 Fed. 900), and the owner of the Holland appealed.

Charles E. Kremer, for appellant.

Frank M. Hoyt and Geo. D. Van Dyke, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

It is determined that, at the common law, no civil action would lie for an injury resulting in death (Insurance Co. v. Brame, 95 U. S. 754), and that, in the absence of an act of congress, or a statute of a state, giving a right of action therefor, no suit will lie in the admiralty for personal injury causing death through negligence on the high seas, or on waters navigable from the sea (The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140; The Alaska, 130 U. S. 201, 9 Sup. Ct. 461). It is also settled that, if a state statute gives a right of action touching a subject of maritime nature, the

admiralty can administer the law by a proceeding in rem, if the statute grants a lien, or in personam, no lien being granted. The Corsair, 145 U. S. 335, 347, 12 Sup. Ct. 949. It is also the law that, if the negligent act causing death occur within the jurisdiction of a state, the law of such state governing such action is applicable. Steamboat Co. v. Chase, 16 Wall. 522; Sherlock v. Alling, 93 U. S. 99; The Transfer No. 4, 20 U. S. App. 570, 9 C. C. A. 521, 61 Fed. 364, affirming The City of Norwalk, 55 Fed. 99. In the first of these cases the negligent act causing death occurred upon the waters of Narragansett Bay, within the jaws of the headlands, and so within the territory of the state; in the second, upon the Ohio river, above the line of low-water mark, and within the territorial jurisdiction of the state of Indiana; in the last, upon the East river, just above Blackwell's Island, and within the territorial jurisdiction of the state of New York. In Re Humboldt Lumber Manuf'rs' Ass'n, 60 Fed. 428, the negligent injury causing death occurred on the high seas on Humboldt bar, off the entrance to Humboldt Bay, and within two miles of the shore. The court applied the doctrine "that the sea, within a belt or zone of three miles from the shore, as distinguished from the rest of the open sea, formed part of the realm," and held that the statute of California giving a right of action for negligent injury causing death was applicable.

It will be observed that in none of the cases to which we have referred did the negligent injury occur upon the high seas beyond the three-mile belt or limit, and that is true of all the cases which have come under our notice. The Corsair, 145 U. S. 335, 12 Sup. Ct. 949; The Oregon, 45 Fed. 63; Killien v. Hyde, 63 Fed. 172; The Victory, 63 Fed. 632. The statute only takes cognizance of torts within the jurisdiction of the state, and has no extraterritorial effect. It is urged that the collision and negligent injury here took place upon the waters of Lake Michigan, and without the belt limit of three miles, and that, therefore, within the decision in U. S. v. Rodgers, 150 U. S. 249, 14 Sup. Ct. 109, it occurred upon the high seas, and without the territorial jurisdiction of the state of Wisconsin. The question is thus sharply presented whether the locus in quo lies within the territorial waters and within the jurisdiction of the state of Wisconsin.

The precise point decided in U. S. v. Rodgers was that a district court of the United States had jurisdiction to entertain the trial of one for a crime committed on an American vessel on the waters of the Detroit river, beyond the boundary line between the United States and the dominion of Canada, and within the waters of the province of Ontario. Jurisdiction was held, under sections 5346 and 730, Rev. St., upon the ground that the locus in quo was on a river within the admiralty jurisdiction of the United States, and out of the jurisdiction of a state of the Union. It was ruled that, by the statute, congress intended to include "the open, uninclosed waters of the lakes under the designation of high seas," with respect to the offenses enumerated in the statute; and the locus in quo being within the admiralty jurisdiction of the United States (The Genesee Chief, 12 How. 443), it was competent for congress to provide

for the punishment of offenses committed upon an American vessel within a foreign jurisdiction.

The question still remains open and undecided by the supreme court whether the jurisdiction of a state bordering upon one of the Great Lakes extends beyond low-water mark; whether the doctrine of a three-mile belt, recognized in the case of oceans, may be applied to the Great Lakes; and whether state jurisdiction, with respect to such lakes, is coextensive with the boundary line of the state, when one of its lines is declared to be a line running through the middle of the lake. We think it must be conceded that Lake Michigan is not a "high sea," in the sense that it is "open and uninclosed, and not under the exclusive control of any one nation or people, but is the free highway of adjoining nations or people," to use the language employed by Mr. Justice Gray. This lake lies wholly within the territory of, and as respects foreign nations is under the exclusive dominion of, the government of the United States. If we may indulge the expression, it is not "no man's land." It is not by nature free to the commerce of the world. It is so free solely by the grace of this government. It is included within the territorial boundaries of four states. The organic law of the territory of Michigan, enacted in 1805, made its westerly boundary a line drawn from the southerly bend or extreme of Lake Michigan, through the middle of the lake, to its northern extremity. 2 Stat. 309. This line was confirmed and established upon the admission of the state of Michigan into the Union in 1836. 5 Stat. 49. The act provided that the state of Michigan should "have jurisdiction over all the territory included within" the boundaries described in the act. The organic law of the territory of Wisconsin, enacted in 1836, established its eastern boundary "by a line drawn from the northeast corner of the state of Illinois through the middle of Lake Michigan to a point in the middle of said lake, and opposite the main channel of Green Bay," etc. 5 Stat. 10. The same line, substantially, was established by the enabling act for the admission of the state of Wisconsin into the Union, passed in 1846. 9 Stat. 56.

It is said that, while the geographical limits of the state extend beyond the place of collision, its territorial limit, its right of sovereignty, its power to enact and enforce laws, does not extend further than the point of navigability, or, at the most, beyond a three-mile belt or zone. We think the vice of the contention lies in the application of international law to the subject in hand. As between nations, the territorial limit of sovereignty with respect to the high seas anciently extended no further than to low-water mark. In later days, "to make good the assertion of the jurisdiction over the foreigner therein," the character of territory was given to the three-mile zone. This, as we think, ought not to be applied to a lake which is not the common boundary of nations, and which is within the exclusive jurisdiction of one nation,—to a body of water that is not by nature open to the commerce of the world. It has never, so far as we are able to say, been applied by any nation, except with respect to its external littoral waters. Lake Michigan is a high sea,

within the provisions of the act under consideration in U. S. v. Rodgers, but it is not an open sea, nor a boundary line between nations. The government of the United States had the sole jurisdiction over this body of water. It saw fit to give to the different states, founded out of the surrounding territory, jurisdiction over its waters, subject to its paramount right in the regulation of commerce and navigation. The Northwest Territory was ceded by the state of Virginia, and accepted by the United States in trust, for the purpose only of the creation of states, and the vesting in them over the whole of this territory of the sovereignty that formerly pertained to the granting state. Shively v. Bowlby, 152 U. S. 1, 26, 14 Sup. Ct. 548.

In the case of Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, and in the case of Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, it is said to be the settled law of this country that "ownership of, and dominion and sovereignty over, lands covered by tide waters or navigable lakes, within the limits of the several states, belong to the respective states within which they are found, with the consequent right to use or dispose of any portion thereof, when that can be without substantial impairment of the interest of the public in such waters, and subject to the paramount right of congress to control their navigation, so far as may be necessary for the regulation of commerce." In the latter case it is said (page 58, 152 U. S., and page 548, 14 Sup. Ct.) that, upon admission of states into the Union, the "administration and disposition of the sovereign rights in navigable waters, and in the soil under them," passed to the control of the states within whose boundaries such waters were included. See, also, Mann v. Land Co., 153 U. S. 273, 286, 14 Sup. Ct. 820.

The grant to the United States, in the constitution, of all cases of admiralty and maritime jurisdiction, does not extend to a cession of the waters in which those cases may arise, or of general jurisdiction over them. Congress may pass all laws which are necessary for giving the most complete effect to the exercise of the admiralty and maritime jurisdiction granted to the government of the Union, but the general jurisdiction over the place, subject to this grant, adheres to the territory, as a portion of territory not yet given away, and the residuary power of legislation will still remain in the state. U. S. v. Bevans, 3 Wheat. 336. We are therefore of opinion that the surrounding states, within the limits prescribed in their respective organic acts, have sovereign rights in and over the navigable waters of Lake Michigan, subject to the paramount right of the federal government to regulate navigation and commerce between the states and with foreign nations. The right of the state to legislate and to enforce its laws is plenary, within the boundaries prescribed, limited and controlled only by the paramount law of the nation. There does not necessarily result any conflict. Both jurisdictions can coexist in the same plane in complete harmony.

Legislation of the character of that under consideration is not open to the objection that state laws cannot extend or restrict the

jurisdiction of the admiralty court. As suggested by Mr. Justice Clifford, in Steamboat Co. v. Chase, supra:

"The practical effect allowed to the state statute is to take the case out of the operation of the common-law maxim that personal actions die with the person."

And, as well observed by Judge Lacombe, in The Transfer No. 4, supra:

"The admiralty courts, before the passage of the statute, exercised jurisdiction over precisely such claims for damages, when brought in his lifetime by the person injured, and there seems no sound reason why they should not exercise like jurisdiction when the tort is committed in a locality where the municipal law preserves the right to redress beyond the life of the injured person. It is not, logically, an enlargement of jurisdiction, so as to cover a general subject not cognizable before, but a mere increase of the varieties of the cases embraced within that subject."

This jurisdiction of the admiralty court, with respect to subjects maritime, to enforce new remedies granted by state laws, is fully recognized by the supreme court. Thus, Mr. Justice Brown, delivering the opinion of that court in The Corsair, supra, observes:

"A maritime lien is said, by writers upon maritime law, to be the foundation of every proceeding in rem in the admiralty. In much the larger class of cases, the lien is given by the general admiralty law, but in other instances, such, for example, as insurance, pilotage, wharfage, and materials furnished in the home port of the vessel, the lien is given, if at all, by the local law. As we are to look, then, to the local law, in this instance, for the right to take cognizance of this class of cases, we are bound to inquire whether the local law gives a lien upon the offending thing. If it merely gives a right of action in personam for a cause of action of a maritime nature, the district court may administer the law by proceedings in personam, as was done with a claim for half-pilotage dues, under the law of New York, in the case of Ex parte McNiel, 13 Wall. 236; but unless a lien be given by the local law, there is no lien to enforce by proceedings in rem in the court of admiralty."

We think the clear result of the authorities to be that the sovereignty of the state of Wisconsin extends to the middle of the lake, and that its laws, so far as they do not conflict with the laws of the United States passed in the regulation of commerce and of navigation, are operative within its prescribed boundary. Such state legislation upon subjects of a maritime nature has been generally recognized in the admiralty (The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498; The Lottawanna, 21 Wall. 558; The America, 1 Low. 176, Fed. Cas. No. 289; The Marion, 1 Story, 68, Fed. Cas. No. 9,087; The California, 1 Sawy. 463, Fed. Cas. No. 2,312; The Glenearne, 7 Fed. 604; The B. F. Woolsey, Id. 108; The Julia L. Sherwood, 14 Fed. 590; The Two Marys, 10 Fed. 919, 16 Fed. 697; The Shady Side, 23 Fed. 731; Woodruff v. One Covered Scow, 30 Fed. 269), and we perceive no reason to deny operation of the law invoked in this case. It is not, in our judgment, like the case of the law of a state intended to be operative upon the high seas, which belong to no one nation and to no one people, but to all nations and to all peoples. In the absence of legislation by congress denying a right of recovery for death occurring through negligent injury upon the waters of Lake Michigan, we perceive no reason for the refusal of an admiralty court

to give effect to the beneficent provisions of this law within the limits of the state.

A question has arisen, not suggested by the appellant upon the argument, whether the proviso of the act of the legislature of the state of Wisconsin, that the action for damages occasioned by negligent injury causing death should be "brought for a death caused in this state and in some courts established by the constitution and laws of the same," is a condition or limitation upon the right granted, so that the right can only be asserted and enforced by and through the courts of the state, and that suit therefore cannot be maintained in a federal court. We are of opinion that the question must be resolved in the negative. The legislature of a state cannot confer jurisdiction of any sort upon a federal court. Such tribunal derives its jurisdiction from the constitution of the United States, not by grant from the legislature of a state. We enforce a right created by the state because the right given touches a subject within the constitutional jurisdiction of the federal court. We think it not competent for a state to so restrict a general right that one entitled to invoke the jurisdiction of a federal court in the prosecution or defense of a suit may not assert the right so granted in a federal court, or that the state may in any way restrict the exercise of the jurisdiction of a federal court to administer the law of the state between persons who come within its jurisdiction. The proviso of the act in question, if it was designed to and in so far as it restricts the enforcement of the right to a state court, is, in our judgment, inoperative and void. The judicial power of the United States, lodged in the federal courts, extends, by the very terms of the constitution, to all classes of admiralty and maritime jurisdiction. The subject-matter of the right here asserted was within such jurisdiction. The statute, as said by Judge Lacombe, in The Transfer No. 4, supra, created a mere addition to the variety of cases embraced within that jurisdiction, so far as it comprehends deaths caused by negligent injury upon navigable waters within the state. It does not, as well held by Judge Brown, in The City of Norwalk, 55 Fed. 98, create a new cause of action. "It does, indeed, create a new right and liability; but it does not create a single one of the elements that make up the fundamental cause of action,—that is, the essential grounds of the demand. All these elements exist independently of the statute, and are not in the least affected by it. It no more creates the wrong, or the damage, than it creates the negligence or the death; nor does it, as in the pilotage and double wharfage cases, add anything to the damages sustained. It authorizes no recovery except for 'the pecuniary damages' already existing. It is apparent, therefore, that, as suggested by Mr. Justice Clifford, in Steamboat Co. v. Chase, 16 Wall. 532, 'the statute does no more than take the case out of the operation of the common-law maxim that an action for death dies with the person.'"

A civil right of action, acquired under the laws of a state where the injury was inflicted, or a civil liability incurred, the action being transitory, may be enforced in the courts of any other state in which the party may be found, according to the course of procedure

of the latter (Dennick v. Railroad Co., 103 U. S. 11; Railway Co. v. Cox, 145 U. S. 593, 604, 12 Sup. Ct. 905; Huntington v. Attrill, 146 U. S. 657, 670, 13 Sup. Ct. 224; Railroad Co. v. Babcock, 154 U. S. 190, 198, 14 Sup. Ct. 978), and this although a like wrong or liability would not be actionable in the state where the suit is brought. It is also settled that, whenever a state statute gives a right, the same may be enforced in a federal court whenever the citizenship of the parties or the nature of the subject will permit. In Insurance Co. v. Morse, 20 Wall. 445, the state of Wisconsin, having the right to determine the conditions upon which it would permit foreign corporations to transact business within its territory (Doyle v. Insurance Co., 94 U. S. 535), provided that any foreign fire insurance company should, as a condition of being permitted to do business within the state, appoint an attorney within the state upon whom process of law could be served, with an agreement of the company that it would not remove the suit for trial into the federal court. It was held that an agreement of the company executed in pursuance of the provisions of the statute was void as against public policy, and that the provision of the statute was in conflict with the constitution of the United States. The Chief Justice and Mr. Justice Davis dissented, upon the ground that the state could rightly exclude foreign corporations altogether from doing business within the state, and had therefore the right to impose such restrictions and conditions upon the company, in permitting its admission to the state, as it saw fit, and that the company accepted the permission with the conditions attached, and was bound thereby. This reasoning, however, was not accepted by the court. The decision has been often approved. Doyle v. Insurance Co., 94 U. S. 535; Kern v. Huidekoper, 103 U. S. 485, 492; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931; Southern Pac. Co. v. Denton, 146 U. S. 202, 207, 13 Sup. Ct. 44; Goldey v. Morning News, 156 U. S. 518, 523, 15 Sup. Ct. 559. Mr. Justice Blatchford, in Barron v. Burnside, speaking for the court, says that the supreme court "has uniformly asserted that no conditions can be imposed by the state which are repugnant to the constitution and laws of the United States." We consider the question foreclosed, and no longer open to discussion. No condition imposed upon a right granted by a state, which prevents one from availing himself of his constitutional prerogative of appeal to the courts of the United States, can be upheld. Such condition conflicts with the federal constitution, and is nugatory and void. In Railway Co. v. Whitton's Adm'r, 13 Wall. 270, an administrator, under letters of administration granted by the state of Wisconsin, but who was in fact a resident of the state of Illinois, brought suit against the railway company, a corporation of the state of Wisconsin, in a state court, to enforce a claim under the statute under consideration for negligent injury of the company causing the death of his intestate within the state of Wisconsin. He subsequently, under the provisions of the federal statute, removed the suit into the federal court. It was there objected that the right to sue in such case existed by virtue of the statute only, and that the right by the statute was given only on a condition that the suit be brought in a Wisconsin court. The contention was, however, over-

ruled by the supreme court by the unanimous opinion of the judges, and it is there said (page 286):

"In all cases where a general right is thus conferred, it can be enforced in any federal court within the state having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such federal court by any provision of state legislation that it shall only be enforced in a state court. The statutes of nearly every state provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property, in particular courts, and in the counties where the land is situated; yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of federal courts over such suits when the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights for injuries to either is established by state legislation, its enforcement by a federal court in a case between proper parties is a matter of course, and the jurisdiction of the court in such case is not subject to state limitation."

See, also, Ellis v. Davis, 109 U. S. 485, 497, 498, 3 Sup. Ct. 327; Davis v. James, 2 Fed. 618; Holmes v. Railway Co., 5 Fed. 75; Mineral Range R. Co. v. Detroit & Lake Superior Copper Co., 25 Fed. 515.

It is sought to distinguish the Whitton Case from the present in this: that that suit was originally brought in a state court, and removed to a federal court, while the case in hand was originally brought in a federal court; and it is said that the former case was a compliance with the statute. We are unable to assent to the suggestion. The fact stated was given no significance in the Whitton Case. It was determined upon the broad principle stated. We cannot give to the word "brought," as used in the statute, so restricted a meaning. If the statute sought to limit the right of action to the courts of the state, it contemplated that the right given should be enforced by them and by them only. It would not be satisfied by the commencement of a suit in the state court, and its immediate removal to a federal court. A like contention was urged in Ex parte Schollenberger, 96 U. S. 369, 376, 377, and was adversely disposed of. The jurisdiction exercised upon the removal is original. Removal is only an indirect mode by which the federal court acquires original jurisdiction. Virginia v. Rives, 100 U. S. 313, 337.

With respect to fault in the collision here, we are satisfied with the conclusion of the district judge. It was the duty of the Holland to keep out of the way of the Aldrich. Considering that she had under charge a long and unwieldy tow, it was her duty to avoid dangerous proximity to the approaching vessel. Being thus bound to keep out of the way, the burden is cast upon her to prove that the collision was due to the fault of the other vessel. This duty has not been discharged. We are satisfied, from a careful consideration of the evidence, which, as usual in such cases, is quite conflicting, that the Holland first designed to pass to leeward of the Aldrich, and, in pursuance of that intention, passed the point of intersection of the courses of the two vessels, and then changed her purpose with a view to pass to windward. Otherwise, her green light would not have been exhibited to the lookout upon the schooner over the port bow. The change of course of the schooner was after the steamer had passed her to windward, and at a time when the collision was inevitable. It is probable that the Aldrich then swung up into the

wind, because she was struck on the port bow between the stern and the cathead. The wheelsman of the Aldrich insists that he put her wheel up. We think that in this he must be mistaken.. The error was, however, in the presence of imminent danger, and is not such a fault as would preclude a recovery by the schooner. "Where one ship has by wrong maneuvers, placed another ship in a position of extreme danger, that other ship will not be held to blame if she has done something wrong, and has not been maneuvered with perfect skill and presence of mind." The Bywell Castle, 4 Prob. Div. 219; The Elizabeth Jones, 112 U. S. 514, 526, 5 Sup. Ct. 468; The Maggie J. Smith, 123 U. S. 349, 355, 8 Sup. Ct. 159.

It is further claimed that the Aldrich was in violation of the regulations in that she exhibited no torchlight. We need not consider whether the regulation with respect to torchlights was in force at this time, or had been repealed by the legislation claimed, or was applicable to the situation. The position and course of the schooner was distinctly apparent to the Holland. Her lights were burning and seen by the lookout of the Holland. A torch would not have disclosed anything that was not known without it to those navigating the Holland. Its absence in no way contributed to or induced this collision, and, if the exhibition of a torch be required by the regulations, is not a fault availing to defeat a recovery.

SHOWALTER, Circuit Judge (dissenting). The statute of Wisconsin, upon which the adjudication in the court below was predicated, gives to the administrator a right of recovery in case his suit is "brought for a death caused in this state and in some court established by the constitution and laws of the same." Lord Campbell's act, as commonly re-enacted in the American states, gives a right of recovery to the administrator, for the benefit of specified persons, in cases where the deceased, if he had survived, could have maintained an action for the injuries which caused his death. Such enactments, being in derogation of the common law, are strictly construed. The right of recovery attaches only within the form of the statute. The fund recovered is a trust for the specified beneficiaries, not assets of the estate. Unless it appear that there are persons to be benefited answering the statutory description, the suit cannot be maintained; nor can there be any recovery in a case where the deceased left no estate, since, in that event, a probate court has no jurisdiction to appoint an administrator. Perry v. Railway Co., 29 Kan. 420. At common law any person may bring an action against any other person. These statutes do not give the right to bring suit. They give to the plaintiff a right of recovery in cases where at common law the judgment would have gone against him. But the formal conditions on which the statutory right goes, must be met; otherwise, the common law determines the judgment against the plaintiff. Under the Wisconsin statute, the right of recovery arises within two limitations, one of which, at least, is exceptional: First, the suit must have been brought for a death caused in Wisconsin; second, the suit must have been brought in one of the courts of that state. There is no legislative sanction in Wisconsin for any recovery by the plaintiff administrator other than within the lines as here named. The state of Wis-

consin has not, by this statute, restricted a general right, or any right whatever, or made any restriction of any kind. To restrict a right is one thing; to create or grant a right within specified boundaries is another. In the former case, the common law is displaced by the restriction; in the latter, by the right. Where a right which did not exist at common law is given by statute, and the same statute specifies the court in which it is to be enforced, such right does not attach to the litigant in any other court. The specification of the particular tribunal marks, in such case, the scope of the right. This rule of statutory construction, I take it, is beyond dispute. Dudley v. Mayhew, 3 N. Y. 9; Chandler v. Hanna, 73 Ala. 390; Dickinson v. Van Wormer, 39 Mich. 141; Janney v. Buell, 55 Ala. 408; Phillips v. Ash, 63 Ala. 414; St. Pancras v. Batterbury, 2 C. B. (N. S.) 477; Hollister v. Hollister Bank, *41 N. Y. 245; Sedg. St. & Const. Law, 342.

The court, being such a one as is specified in the act, does not adjudge a recovery in favor of the plaintiff because anything has been added to its judicial power, but because the statute gives the right to the plaintiff. Nor does a court, other than as named in the statute, dismiss the suit for want of jurisdiction. It adjudges against the plaintiff, or permits him to dismiss, because he is unable to make out a cause of action. The question here is one of statutory construction, and it concerns the recovery adjudicated in favor of this appellee, rather than the jurisdiction of the district court to hear and determine whether or not a right of recovery was made out by him. The word "jurisdiction" is used somewhat untechnically in the first of the following quotations from section 399 of Sutherland on Statutory Construction:

"When a right is solely and exclusively of legislative creation, when it does not derive existence from the common law or from principles of equity, jurisdiction may be limited to particular tribunals, and new specific remedies provided for its enforcement. Then the jurisdiction can be exercised and the remedy pursued only as the statute provides."

"When a right is given by statute and a specific remedy provided, or a new power and also the means of executing it are therein granted, the power can be executed and the right vindicated in no other way than that prescribed by the act."

The suit in question here was brought in the district court of the United States. Assuming for that court everything conceivable in the way of judicial power or jurisdiction, was there any law giving to this appellee a right to the recovery adjudged to him by that court? I insist that the statute of Wisconsin does not authorize the recovery, that said adjudication is without legislative sanction, is not within the statute, and is not to be vindicated any more than if it had been made in a court of Illinois or of England. Lord Campbell's act, as re-enacted, in Illinois, for instance, contains no such limitation as that under discussion. The courts hold that the recovery may be had on such a statute in the federal court if the citizenship be appropriate or in the courts of any state where the defendant can be found. But the recovery given by the Wisconsin statute arises within the limitation that the suit must be brought in some one of the courts of that state. If a suit intended to enforce the recovery given in that statute be brought in a foreign court, the plaintiff cannot

succeed, because the Wisconsin statute fails to give him the right of recovery and by the common law the action does not survive. If, on the other hand, the suit is brought in a Wisconsin court, and be there prosecuted, or be thence removed under the federal statute to the circuit court of the United States and be there carried on to a conclusion, the plaintiff, his case being otherwise good, will recover a judgment against the defendant. This result will not follow, as already said, because anything has been added to the jurisdiction of either the state or federal court, but because all the conditions, including the requirement that the suit must have been brought in one of the courts of Wisconsin, have been met and the statute has thus become effective to give the recovery; because, in short, the plaintiff makes out his case.

If the legislature of Wisconsin had seen fit, the right of recovery might have been given in suits brought in certain specified courts of that state, in which event the plaintiff could not have made out a right to have judgment in his favor in any other court of the state; and this, without question, would have been the construction put upon the statute by the courts of Wisconsin. The limitation fixed in the statute is, as already stated, that the right of recovery shall arise in case the suit "be brought in some court established by the constitution and laws of" Wisconsin. This language should be construed, if construction were needed, in connection with and in subordination to the federal statute giving to a litigant the right to remove a suit brought in the state court to the circuit court of the United States. A suit brought in the state court, and afterwards removed to the circuit court of the United States, does not lose its identity in process of removal. The latter court takes up the proceeding where the former left off, and such proceeding continues to be a suit which was brought in the state court, and so falls within the express terms of the condition. If the recovery were given on the condition that the suit should be not only brought but thereafter carried on in a court of the state without being removed to a federal court, the plaintiff would necessarily fail in every suit so removed. The legislative intent to give him the recovery would be wanting after the removal. As to any defendant entitled to remove, the state statute, being to that extent supplanted by federal legislation, would be ineffective. But this exceptional result does not follow from the condition as written. I am not able to concur in a construction which would narrow the scope of the statute as here suggested, nor in the conclusion reached in the prevailing opinion, that the condition under discussion is void. The logic whereby we may put into the words of the condition a meaning which they do not express, and then declare the condition void as the result of such construction, appears to me anomalous.

Where a statute creates a right of recovery,—declares a right which did not exist at common law,—but does not limit the scope of that right by specifying the court wherein, or the method of proceeding whereby, it may be enforced, such statutory recovery may be had in any court of general jurisdiction. This proposition is included in the following from the section in Sutherland above mentioned:

"If a new right is created by statute and it is silent as to the mode of its enforcement, or as to the form of redress in case of invasion, then the proprietor of that right may resort to the common law or the existing general statutory proceeding for remedial process."

Where a cause of action arises at common law or in equity, the remedy in the federal courts cannot be taken away or abridged by state legislation. And where, as said, a right is created by a state statute, without limitation as to the tribunal in which it can be asserted, such right, the suit being otherwise within the judicial power of the United States, will be enforced in a federal court. But I know of no instance, other than the case at bar, in which a federal court has insisted upon extending a right created by a state statute beyond the lines of such right as marked in the grant. In this respect, the decision before us for review, so far as I can find, is without precedent. The cases cited in the prevailing opinion do not, nor does any one of them, touch the question. In Insurance Co. v. Morse, 20 Wall. 445, a statute of Wisconsin declared that a corporation of another state should not do business in Wisconsin without agreeing with the state that it would not remove to the circuit court of the United States any suit in which it might be made defendant, brought in a Wisconsin court. If the legislature of Wisconsin had declared that a foreign insurance company doing business in that state should not remove to the federal court a suit which, under the federal law, was removable, the sense and effect of the statute would have been the same. Such foreign corporation could not have become subject to such a regulation without coming into the state, and it could evade the same by departing from the state. The enactment as here paraphrased amounts to no more than a declaration that the foreign company shall not do business in Wisconsin unless it will agree as demanded. The common formula in the books is that a foreign corporation, coming into a state to do business, thereby agrees to all state laws touching foreign corporations. The disguise of an express agreement with the state so exacted by the state, does not change the character of the enactment. But, and this is the point to be noted, in Insurance Co. v. Morse the matter litigated was a cause of action at common law, a suit on a contract. The right asserted by Morse and contested by the company was not brought into existence by statute and within such lines that it could not attach to a litigant in an original suit in a federal court. In Insurance Co. v. Morse the question was whether or not the suit could be removed to the federal court under the federal statute. Here the question is, had the libelant a right of recovery? In Railway Co. v. Whitton's Adm'r, 13 Wall. 270, the suit was brought in a court of Wisconsin to enforce the right given by the very statute here in question. Said suit was afterwards removed to the circuit court of the United States, and that court ruled that the plaintiff was entitled to recover. This decision was affirmed by the supreme court of the United States. The question whether or not, in an original suit, not brought in a Wisconsin court, but in a circuit court of the United States, a recovery by plaintiff would be authorized by the statute here in question, was not before the supreme court of the United States, and apparently

not even thought of by the learned writer of the opinion in that case.

The decision in the case at bar goes on the theory, either that the proviso here under discussion invades the judicial power of the United States as declared in the constitution, or that said proviso conflicts with the federal statutes specifying the jurisdiction to be exercised by the courts of the United States, and is, hence, void. If there were in this appellee a right of recovery at common law, and a state statute restricted the remedy for enforcing that right to the courts of the state, such statute would be void as in conflict with the law of the United States. If there were here a state statute which created a new right, without limitation as to the tribunal for enforcing it, such new right could be enforced as well in a federal court as in any other. But here no restriction has been put upon the remedy for the enforcement of any right existing at common law, nor has the state created a new right which is general as respects the remedy. The same power which created the right in question, in so doing, fixed the limits to which such right might extend or within which it could arise. By a rule of statutory construction, never disregarded till now, and against which it is impossible to frame a coherent objection, the right of recovery here does not attach to this appellee.

The majority opinion contains the following:

"We enforce a right created by the state, because the right given touches a subject within the constitutional jurisdiction of the federal court."

But here the right is not given. If the assumed right were given, if it could be found within the bounds of the statute, if the court could create the right, such right would indeed touch or concern a subject-matter within the cognizance of the district court of the United States. I quote again from the opinion:

"We think it not competent for a state to so restrict a general right that one entitled to invoke the jurisdiction of a federal court in the prosecution or defense of a suit may not assert the right so granted in a federal court, or that the state may in any way restrict the exercise of the jurisdiction of a federal court to administer the law of the state between persons who come within its jurisdiction."

But here the right of recovery is not within the statute. Do we "administer the law of the state" by declaring such law void? If the statute had given the recovery in some one of the state courts, and the suit should be brought in another of the state courts, the law of the state would be that plaintiff could not recover; and it is the law of Wisconsin in the case before us that appellee cannot recover. Referring, further, to the sentence last quoted, there is here no "right so granted," nor has the state restricted "a general right." If the meaning be that the state of Wisconsin had no power to grant the right, within bounds as specified in the statute, I cannot assent to the proposition. A state may grant a restricted right. The selfsame power which creates a right may specify, and thereby fix, the bounds of the grant. The authority, for illustration, which created what is known as a patent right, to wit, the congress of the United States, declared in effect that the right so created is enforceable only in a federal court. In other words, the grant of a patent monopoly is, as respects the remedy for its enforcement, a restricted grant. The

right to recover would not belong to a patentee in a suit for infringement prosecuted in a state court. This is true, regardless of the question whether or not, in a patent case, a state court would have jurisdiction; and such, in substance, was the ruling of the court of appeals of New York in Dudley v. Mayhew, above cited.

On my understanding of the matter, the legislature of Wisconsin has not given to this appellee a right of recovery in this case. Therefore, I do not concur in the judgment of affirmance.

Decree affirmed.